In re **EASTERN UTILITIES INVESTING CORPORATION.**

**No. 1247.**

District Court, D. Delaware.

April 7, 1938.

720

Robert H. Richards and Charles F. Richards (of Richards, Layton & Finger), all of Wilmington, Del., and Travis, Brownback & Paxson, of New York City, for debtor.

Daniel O. Hastings (of Hastings, Stockly & Duffy), all of Wilmington, Del., for Associated Gas & Electric Co.

Joseph M. Hartfield (of White & Case), all of New York City, for Thomas F. Bayard, trustee.

John J. Morris, Jr., U. S. Atty., of Wilmington, Del., Frank J. Wideman, Sp. Ass't to Atty. Gen., and Eugene O'Dunne, Jr., Sp. Atty., Bureau of Internal Revenue, of Washington, D. C. (Herman Oliphant, Gen. Counsel, Department of the Treasury, J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and Angus R. Shannon, Jr., Sp. Atty., Bureau of Internal Revenue, all of Washington, D. C., on the brief), for the United States.

NIELDS, District Judge.

Petition of the United States for an examination of certain present and former officers and directors of the debtor and of other persons, pursuant to section 21a of the Bankruptcy Act, as amended, 11 U.S. C.A. § 44(a).

January 10, 1938, the United States filed a petition in this proceeding stating that its tax claims exceed the value of the assets of the debtor held in escrow by the trustee as security for their payment. This petition states, inter alia, as follows:

"5. That an investigation, recently completed by representatives of the United States of America, reveals what are believed to be valid claims and causes of action which if successfully prosecuted, would result in the recovery of additional assets of substantial value for the estate of the Debtor; that the existence of such claims and causes of action cannot be conclusively determined, nor successfully prosecuted, unless additional facts are obtained, and that such facts can only be obtained by examination of witnesses and the production of books and documents in accordance with Section 21(a) of the Bankruptcy Act. * * *

"6. That under an Indenture dated March 15, 1929, the Debtor issued $35,000,-000.00 5% debentures due in 1954, which debentures were underwritten by Harris Forbes & Co., and Halsey, Stuart & Company, and sold to the public; that the prospectus upon which the debentures were advertised and sold contained statements: (a) that the Debtor was engaged primarily in the business of acquiring and holding for long term investment, securities deriving their income from public utility and allied enterprises; (b) that the Debtor diversified its investments among the securities of a number of public utility and allied enterprises; (c) that its primary business was the investment of the proceeds from the sale of its capital securities, and the reinvestment and/or disbursement to its security holders of the income received; (d) that the market value of its assets (after the issuance of the debentures) exceeded $83,000,000.00 on November 30, 1929, or more than $2,300.00 per $1,000.00 debentures; (e) that the more important companies from whose general operations the income of the Debtor was received consisted of some twenty odd companies named therein.

"7. That said prospectus, although indicating wide diversification of investments, failed to state that of the twenty odd companies named therein, 90% of the Debtor's investments were in five of said companies, all of which were members of the Associated Gas & Electric System;

"That said prospectus also failed to state that $10,000,000.00 of said investments represented preferred stock of two service management corporations within the Associated Gas & Electric System, whose sole assets consisted of service management contracts which were terminable at the discretion of Associated Gas & Electric Company by virtue of the fact that both parties to the contracts were members of the Associated Gas & Electric System;

"That a representative of the Associated Gas & Electric System has since testified before the United States Board of Tax Appeals that said service management corporations were 'just bookkeeping entities';

"That said prospectus further failed to state that the Debtor's substantial investment in the Class A common stock of its parent company, Associated Gas & Electric Company, represented stock, the market price for which was being manipulated on

the stock exchanges under the direction of the management of the Associated Gas & Electric Company and that the persons comprising said management were also officers and directors of the Debtor; and that part of its remaining investments represented junior securities of corporations in the Associated Gas & Electric System for which no established market existed.

"8. That the net proceeds, amounting to $32,812,500.00, from the sale of the Debtor's $35,000,000.00 5% debentures were never received by the Debtor but were paid over by the bankers underwriting the issue to Associated Gas & Electric Company, and that entries were placed on the Debtor's books so as to make it appear that the Debtor received and disbursed said proceeds;

"That contrary to the representations in said prospectus and in the Debtor's published annual report for 1929, diversified investments were not made with said proceeds, but the same were recorded as paid to Associated Gas & Electric Company for the following securities:

| Securities | Shares | Cost |
|---|---|---|
| Broad River Power Co. $7. Preferred | 5,878 | 646,580.00 |
| Florida Public Service Co. $7. Preferred | 5,509 | 605,990.00 |
| General Gas and Electric Corp. $8. Preferred A | 33,718.98 | 4,720,657.20 |
| General Gas and Electric Corp. $7. Preferred A | 16,220.50 | 1,946,460.00 |
| General Gas and Electric Corp. Class A | 24,000 | 2,160,000.00 |
| General Gas and Electric Corp. $7. Preferred B | 28,051 | 3,366,120.00 |
| General Gas and Electric Corp. Class B | 150,000 | 14,250,000.00 |
| Assoc. Gas and Elec. Co. $5. Preferred | 7,778 | 700,020.00 |
| Assoc. Gas and Electric Co. Class A | 77,500 | 4,417,500.00 |
| Total | | $32,813,327.20 |

"That on the date of the purchase of the above securities the officers and directors of Associated Gas & Electric Company and its subsidiary, General Gas & Electric Corporation, were, for the most part, also the officers and directors of the Debtor;

"That immediately prior to the Debtor's investment totaling $26,442,000.00 in the securities of General Gas & Electric Corporation, the latter's principal assets, consisting of the capital stocks of four subsidiary operating companies, had been caused to be transferred to other companies within the Associated Gas & Electric System, in exchange for junior securities of Associated Gas & Electric Company;

\* \* \* \* \* \*

"9. That in December, 1929, an additional $5,025,096.00 of the Debtor's funds were caused to be invested in Class B common stock of General Gas & Electric Corporation, making a total investment in said Class B common stock of $19,818,000.00 for the year 1929;

"That in 1934 said $19,818,000.00 of stock (exchanged in the meantime for Class A stock) was caused to be transferred to Associated Gas & Electric Company in exchange for $6,231,000.00 principal amount of the Debtor's own 5% debentures; that on said transaction the Debtor sustained a loss of $12,951,000.00, or approximately 40% of the entire proceeds received on the sale of the Debtor's 5% debentures."

The petition prays for an order directing the examination of certain persons, formerly officers and directors of the debtor and of certain banking houses, with respect to the acts, conduct and property of the debtor including the matters alleged in the petition.

In reply to the petition the debtor filed three affidavits. The principal affidavit made by the general auditor of Associated Gas & Electric Company controverted or offered explanations of the allegations of the petition. The other affidavits were made by two attorneys representing the debtor respecting Federal tax claims and certain negotiations relating to the amounts thereof.

### Prior Proceedings.

October 14, 1936 the debtor filed its petition in this court for reorganization under section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207. Attached to the debtor's petition was a plan of reorganization with acceptances thereof executed by Associated Gas & Electric Company and its subsidiary, The Associated Corporation, holders of a majority of each class of outstanding securities of the debtor except Class A common stock. By Exhibit B annexed to said plan it appears that the value of the debtor's investments consisting of junior securities of Associated Gas & Electric Company, based on market quotations, was approximately $1,500,000 on August 31, 1936.

Tax claims on behalf of the United States for 1927 of $85,233.77, for 1928 of

$80,637.15 and for 1929 of $99,524.86 are pending before the Board of Tax Appeals. Tax claims for 1933, 1934 and 1935 were filed in this proceeding on the following dates and in the following amounts:

| Year | Filed | | Amounts |
|------|-------|---|---------|
| 1933 | November | 13, 1936 | 1,801,721.13 |
| 1934 | January | 14, 1937 | 1,797,511.26 |
| 1935 | January | 14, 1937 | 144,422.07 |

November 16, 1936 a hearing was held on retaining the debtor permanently in possession of its estate. The United States was represented by counsel at the hearing and requested the appointment of a trustee. The counsel said:

"Within the last three weeks we have been notified of the pendency of this proceeding and have had little more than time to call in our agents from the field and investigate the financial history of this Debtor, and on the basis of that we find that the present assets are inadequate to satisfy the Government's claim."

Speaking of the advantages of a trustee the counsel said:

"The trustee will have the advantage of being able to investigate millions of dollars worth of transactions, trading in securities, which have taken place between interlocking directorates and affiliate corporations, whereby the assets of this corporation, which had a market value in 1929 of $85,000,000, now have a market value, according to the petition, of one and one-half million dollars. * * * This [debtor] started out as an investment trust. The securities were sold on the allegation that the $35,000,000 [proceeds of debentures] would be used for the purpose of investing in income producing securities of public utility operating companies and holding companies. That was the prospectus on which the securities were sold.

"As a matter of fact, the $35,000,000 came from the bankers, went into this company and out again on the same day to the parent company, the Associated Gas & Electric Company of New York, and that open account of $35,000,000 was satisfied through the issuance of junior securities of Associated Gas & Electric Company and General Gas & Electric Company, which is a member of the associated system."

In conclusion the counsel said:

"It [the United States] feels this is a situation where an investment trust has been utilized and dissipated and all the profit enured to the benefit of other corporations in this system.

"If ever there was a reorganization that deserved a 21(a) examination, this is it."

As a result of the hearing the court appointed a trustee for the debtor with the usual powers.

April 20, 1937, the trustee filed his petition stating that during the latter part of December, 1936 and the early part of January, 1937, representatives of the Securities and Exchange Commission by letter and telephone conversation requested that their representatives be allowed access to the books, papers, and records of the debtor for the purpose of an examination. He further stated that the request was based upon the fact that the Commission was investigating Associated Gas & Electric Company, the parent of debtor. Thereupon an order was entered authorizing a representative of the Securities and Exchange Commission to conduct the examination requested.

April 30, 1937, the debtor filed its petition with an amended plan of reorganization. After notice to all stockholders and creditors of the debtor, including the United States, a hearing on the amended plan was held on June 11, 1937. The debtor offered testimony to show the fairness and feasibility of such plan. Neither the United States nor any creditor or stockholder of the debtor appeared at this hearing or filed any objection to the confirmation of the amended plan. July 21, 1937, this court approved the amended plan stating:

"Acceptances have been filed herein on behalf of 83.55% of the debentures of debtor, 98.93% of the prior preferred stock of debtor, 96.39% of the preferred stock of debtor, 99.13% of the participating preference stock of debtor and 52.89% of Class A common stock of debtor. * * * The testimony and exhibits establish that the amended plan is not only fair but liberal to debtor's security holders."

Prior to submission to the court a proposed order of confirmation was submitted to representatives of the Treasury Department and of the Bureau of Internal Revenue. By letter dated July 24, 1937, General Counsel to the Treasury Department advised counsel for the debtor that the proposed order of confirmation was satisfactory to the Treasury Department and that the United States attorney for the District of Delaware was authorized to interpose

no objection to the entry of such order. July 26, 1937, an order of confirmation was entered. The assets of the debtor were ordered to be transferred to Associated Gas & Electric Company under the following terms and conditions:

"(a) All of the assets, properties, interests, claims, rights, choses in action, rights. of action in tort or contract and beneficial interests, real, personal and mixed, tangible and intangible, of every kind, character and description, and wheresoever situated, now owned by the Debtor and/or said Trustee or which it or he may at any time hereafter acquire or own, including, without limiting the generality of the foregoing, any and all claims, rights or choses in action, legal or equitable, which the Debtor and/or said Trustee may have against any other person, firm or corporation, and in particular the following: [Here follows list of securities] including all interest, dividends, rights and/or other increment, if any, which may be received in respect thereof, shall be retained and held in escrow by Thomas F. Bayard, of Wilmington, Delaware, Trustee of the Debtor under the order of this Court dated November 16, 1936, subject to the direction and control of this Court, until the amount, if any, finally determined, by agreement of the Debtor and the duly authorized representatives of the United States of America, or by any Court or other tribunal having jurisdiction in the premises, to be due to the United States of America from the Debtor on account of any taxes or custom duties, interest and penalties, or any other lawful claim or interest, shall be paid in cash in full, or until 90 days after the final determination of such amount, if any, as aforesaid, whichever shall first occur."

This order of confirmation also provided for the consummation of the amended plan. Debtor and Associated Gas & Electric Company took immediate steps to put it into effect. As a result, substantially all of the securities of the debtor formerly outstanding and in the hands of the holders thereof have been exchanged in accordance with the provisions of the amended plan. Time for completing said exchange has been extended until July 26, 1938. Whether this order ultimately should be modified or set aside may well await the result of any 21a examination that may be ordered.

#### The Law

Section 21a of the Bankruptcy Act, 11 U.S.C.A. § 44(a) provides:

"A court of bankruptcy may, upon application of any officer, bankrupt, or creditor, by order require any designated person, including the bankrupt and his wife, to appear in court or before a referee or the judge of any State court, to be examined concerning the acts, conduct, or property of a bankrupt whose estate is in process of administration under the provisions of this title. * * *"

This section applies to proceedings under section 77B. In re Paramount Publix Corporation, 2 Cir., 82 F.2d 230; In re Fox Metropolitan Playhouses, 2 Cir., 74 F.2d 722.

The nature of examinations under section 21a is thus described:

"No issue is involved. No fact is asserted on one side and denied on the other. No fact is to be proved or disproved. The examination is simply a general inquiry into the 'acts, conduct and property of the bankrupt,' the cause of his failure, the whereabouts of his property, the contracts relating to his business, and in short an examination into all matters and things of reasonable interest to the creditors; and, as a consequence, a great latitude of inquiry is permitted." Remington on Bankruptcy (4th ed.), Sec. 1997.

The jurisdiction given this court by section 21a of the Act is the jurisdiction to exercise a wise judicial discretion. Yellow Motor Co. v. Davis, 8 Cir., 27 F.2d 597; In re Weidenfeld, 2 Cir., 254 F. 677; North Ward Radio Co., Inc., v. Grigsby Grunow Co., 3 Cir., 67 F.2d 745; In re Kelly, 5 Cir., 70 F.2d 730.

The United States has moved to strike the answering affidavits filed by the debtor relying upon certain dictum in the case of In re Kelly, D.C., 7 F.Supp. 376. There the application was in a bankruptcy proceeding. Here the application is in a proceeding under section 77B which expressly provides: "The debtor shall have the right to be heard on all questions". The debtor has the right to be heard in opposition to the petition of the United States and the motion to strike must be denied.

The debtor contends that the application for an examination is premature. It may be that the tax claims of the Government when finally adjudicated will be less than the securities held by the trustee in escrow. Thus all tax claims will be paid within the 90 days provided for their payment in the order of confirmation and the United States

will cease to be a creditor. The debtor further contends that the application is inequitable. At the hearing on the question of retaining the debtor in possession, as heretofore recited, counsel for the United States objected to such retention. He represented that debtor's own officers were guilty of the fraudulent practices now appearing in the Government's petition and that a 21a examination was required. This was fourteen months before the filing of the Government petition for an examination. Meanwhile the Government did nothing to determine the amount of the tax claims filed in this proceeding. Yet during this same interval the amended plan was confirmed and in large measure consummated.

■ These contentions are outweighed by the facts. The United States is a creditor within the meaning of section 21a of the Act. Section 1(9), 11 U.S.C.A. § 1(9) provides: "'Creditor' shall include anyone who owns a demand or claim provable in bankruptcy," etc. It is not necessary that the claim be allowed to entitle a creditor to petition for the right to examine under section 21a. Here sufficient proof exists in the record that the Government "owns a demand or claim provable in bankruptcy" within the statutory definition of "creditor". Such proof is found in the debtor's recognition of the Government's claims both in the amended plan of reorganization and in the order of confirmation thereof. Moreover, the estate of the debtor is in process of administration and the proposed examination is in aid of such administration. Although the amended plan has been confirmed, the debtor's estate is still being administered in the reorganization proceeding. So long as any part of the estate is in the hands of the court the right to examine under section 21a continues with respect to such matters. Valuable assets remain in the hands of the court. The debtor has not been discharged from its duties and liabilities and no decree has been entered discharging the trustee and closing the case.

■ The petition of the United States contains serious charges of fraud and corporate mismanagement. It alleges that the known assets of the debtor are insufficient to pay the taxes due the United States. The purpose of the examination is to discover whether valid causes of action exist which if successfully prosecuted would result in the recovery of additional assets.

Since the examination is purely exploratory the court in the exercise of its discretion considers that enough appears in the record to order an examination. Such an examination, however, furnishes no excuse for a further delay in the determination of the several amounts, if any due, the United States for taxes. This determination should be prosecuted at once and concluded as speedily as may be.

Accordingly, an order for a 21a examination and a separate order for the determination of the amounts due the United States as taxes may be submitted.