## In re UNION MORTG. INV. CO.
### No. 1167.

District Court, D. Delaware.
Nov. 22, 1938.

William S. Satterthwaite (of Satterthwaite & Foulk), of Wilmington, Del., trustee.

Paul Leahy (of Ward & Gray), of Wilmington, Del., and Sydney C. Weinstein (of Hays, Wolf, Kaufman & Schwabacher), of New York City, for National Bondholders Corporation.

Hawthorne D. Battle (of Price, Smith & Spilman), of Charleston, W. Va., for Charleston Nat. Bank.

NIELDS, District Judge.

Motion by Charleston National Bank of West Virginia to vacate or modify an order of this court entered August 12, 1938. This order was made upon petition of William S. Satterthwaite, trustee of the debtor, and provided for examinations under Section 21a of the Bankruptcy Act, 11 U.S.C.A. § 44(a), "concerning the acts, conduct and property or business relations of the debtor" and specifying the persons to be examined and appointing special masters to conduct the examinations.

### Earlier Proceedings in this Court.

Union Mortgage Investment Company, the debtor, (formerly West Virginia Mortgage and Discount Company) was engaged in the business (1) of marketing its own guaranteed bonds to the public and (2) loaning the money so obtained on notes secured by first liens on real estate. Debtor deposited the notes and mortgages with an indenture trustee as collateral for its bonds.

In 1926, debtor executed an indenture to Central Trust Company of Charleston, West Virginia, as trustee, and issued thereunder bonds of the face amount of approximately $2,000,000. These bonds were guaranteed by National Surety Company and sold to the public. In 1928, the Charleston National Bank of Charleston, West Virginia (hereinafter referred to as "Charleston Bank"), was substituted as trustee and the collateral was transferred to it.

About 1930 the debtor became financially embarrassed. Its assets consisted largely of mortgages which were frozen. From 1931 until May, 1933, the Charleston Bank administered the trust in conjunction with Greyling Realty Corporation, a wholly owned subsidiary of National Surety Company. After the failure of National Surety Company in 1933, a Bondholder's Protective Committee was formed to protect the rights of the holders of bonds of the debtor as well as those of other mortgage companies whose bonds were guaranteed by National Surety Company.

A general plan of reorganization was prepared by this Protective Committee and by the Superintendent of Insurance of New York as liquidator or rehabilitator of National Surety Company. In order to obtain the benefits of a liquidation of the collateral over an extended period of time and to provide a centralized control of the liquidation a new corporation called "National Bondholders Corporation" was formed.

In April, 1935 the debtor filed its voluntary petition in this court under section 77B, 11 U.S.C.A. § 207, alleging it was unable to meet its debts as they matured. The petition was approved and a trustee appointed. A plan of reorganization was filed. Under this plan National Bondholders Corporation, representing the holders of the bonds of the debtor series AN, F, G and H and Union Series Eye Corporation, a subsidiary of National bondholders corporation, representing the holders of bonds series I of the debtor were to receive all bonds of the debtor and assets securing the same including all rights of action of every kind and character free and clear of the trust indenture, the rights of the indenture trustee, the rights of the bankruptcy trustee and the rights of all other creditors.

July 30, 1935, an extended hearing was had respecting the value of the pledged assets of the debtor. Counsel for certain stockholders of the debtor contended there was an equity in such assets over and above the amount of the bonds outstanding. The bondholders offered proof that no equity existed in the assets for stockholders or creditors and that such assets should be transferred to the National Bondholders Corporation as provided in the plan. At the same time the trustee in bankruptcy testified that the only assets of which he had knowledge, other than those that were pledged, were certain books and records of the company. His report showed that the company was insolvent.

Counsel for certain stockholders inquired as to an equity in the pledged assets but no such effort was made by any other party. On the contrary, all other parties took the position that there was no equity available to general creditors or stockholders. Notwithstanding the showing then made the matter was continued by the court for a week to afford stockholders every opportunity to be heard. No further evidence was presented.

August 8, 1935 the court entered a decree confirming the plan; finding the debtor insolvent; determining the rights of the

bondholders and providing that the assets be transferred as provided in the plan.

The order confirming the plan provides:

"6. That the Charleston National Bank is hereby directed to assign, transfer, deliver and turn over to the National Bondholders Corporation, or its nominee, subject to the provisions in this order hereinafter contained, all assets, property and funds of whatever kind and wherever situated, held by it as collateral for said Series AN, F, G and H Bonds, or for and on account of the said Bondholders, including all rights and causes of action which it may have as Trustee for said Bondholders; and said Charleston National Bank is hereby directed to assign, transfer, deliver and turn over to the Union Series Eye Corporation, or its nominee, subject to the provisions in this order hereinafter contained, all assets, property and funds of whatever kind and wherever situated, held by it as collateral for said Series I Bonds, or for and on account of the said Bondholders, including all rights and causes of action which it may have as Trustee for said Bondholders."

The order further provides:

"8. In carrying out the foregoing provisions of paragraph 6 of this order, Charleston National Bank * * * shall, * * * if, as and when it may hereafter and from time to time be determined by a court of competent jurisdiction· that the Charleston National Bank holds any other assets, property or funds for or on account of any of the Bondholders or as collateral for said Bonds, forthwith assign, transfer, deliver and pay over such assets, property or funds to the National Bondholders Corporation, or its nominee, where the same relates to Series AN, F, G or H Bonds, or the holders thereof, and to Union Series Eye Corporation, or its nominee, where the same relates to Series I Bonds, or the holders thereof; * * *."

"9. That the question of whether or not there are any assets, property or funds other than those specified in subdivisions (a) and (b) of paragraph 8 of this order, held by Charleston National Bank for or on account of the Bondholders or as collateral for said Series AN, F, G, H and I Bonds, or for which it is accountable to the Bondholders under and by virtue of the Collateral Trust Indenture under which it is acting as Trustee for the Bondholders, or by virtue of any act or thing done or omitted to be done by it as Trustee, or by virtue of any other matter, is hereby reserved for determination by such Court or Courts as have or may have jurisdiction thereof, and all rights and causes of action in respect thereto are left unimpaired by this order and neither this order nor anything done hereunder shall prejudice any action or proceeding which may be brought by or against the Charleston National Bank for an accounting in respect to said trusts, or to hold the Charleston National Bank responsible for any act or thing done by it in connection with said trusts, or to determine the rights of the Charleston National Bank in or to all or any part or portion of the assets, property and funds referred to in this paragraph, * * *."

By the order of confirmation this court reserved to National Bondholders Corporation and Union Series Eye Corporation all rights of bondholders of the debtor against the Charleston Bank. Accordingly August 8, 1935, the Charleston Bank transferred all the assets which it held in trust to National Bondholders Corporation or Union Series Eye Corporation.

October 6, 1936, the trustee in bankruptcy filed his petition for an allowance, stating: "That your petitioner has performed all the services required of him in the debtor proceedings under Section 77B of the Bankruptcy Act, and all services required in the due and orderly administration of the estate of the aforesaid debtor."

October 20, 1936, after notice and hearing, an order was entered in this proceeding making allowances to the trustee and to others entitled thereto.

No further proceedings were had herein until the filing on August 3, 1938, of the petition by the trustee for an order for a 21a examination. Thereafter August 12, 1938, the court made an order providing inter alia:

"(1) That examinations pursuant to Section 21a of the Bankruptcy Act, as amended, concerning the acts, conduct, property or business relations of the Debtor be had of Joseph A. Markel, Earl Ward, Edgar J. Hecht and M. L. Harris of New York, N. Y. and of J. Edgar Gans of Washington, D. C. * * *

"(4) That the Special Masters and the Trustee, if the Court shall find that the Trustee is so entitled, shall be allowed reasonable compensation for their services and reimbursements of their actual and neces-

sary expenses as this Court may hereafter fix and determine, and such compensation and reimbursements shall be payable by National Bondholders Corporation, a corporation of the State of Delaware."

August 31, 1938, the Charleston Bank learned of the entry by this court of the order herein of August 12, 1938, directing a 21a examination of five witnesses. The testimony of one witness had already been taken in New York. The only counsel appearing at the taking of the deposition of the above witness was a representative of the firm of Hays, Wolf, Kaufman & Schwabacher as attorneys for William S. Satterthwaite, Trustee. This firm has appeared in these proceedings and in the suits in West Virginia as counsel for National Bondholders Corporation. September 2, 1938, had been fixed for taking the testimony of another witness at Washington. On that day the application of the Charleston Bank was made to this court to stay further proceedings under the order authorizing the 21a examination.

### Proceedings in West Virginia.

December 29, 1936, National Bondholders Corporation and Union Series Eye Corporation acting on behalf of certain bondholders of the debtor brought suits in equity in West Virginia against the Charleston Bank, individually and as trustee, to secure an accounting of the administration of the trust by that bank as trustee under the collateral trust indenture dated May 1, 1923. These suits are now pending and the District Court of West Virginia is determining the matters involved therein.

November 16, 1937, plaintiff filed certain interrogatories in these cases to be answered by the defendant bank. Defendant objected and moved to strike the interrogatories as a whole. In June, 1938, National Bondholders Corporation sought to take the deposition of a former officer of the defendant bank in Baltimore, Maryland. The taking of this deposition was afterwards stayed until the hearing and disposition of defendant's motion to strike the interrogatories. July 19, 1938, the motions were heard by the West Virginia court. August 1, 1938, that court sustained defendant's objections to plaintiff's interrogatories and referred the causes to a special master: "(1) To take evidence and to report to the Court, for its advisement, his findings on all questions of fact and conclusions of law arising upon the issues between the plaintiff and defendant in this cause, and on all other material matters alleged in the Bill of Complaint of the plaintiff, in the answer of the defendant and the reply of the plaintiff, filed herein, and such other matters as said plaintiff or defendant may require, the same being pertinent, and such matters as said Special Master himself may deem pertinent, whether so required or not * * *."

September 22, 1938, National Bondholders Corporation issued subpoenas to two persons to testify before a Notary Public on September 30, 1938 upon oral examination before trial under Rule 26 of the new Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. The defendant, the Charleston Bank, moved the West Virginia court to stay the taking of these depositions. After hearing the motion, the court entered the following order: "It is adjudged, ordered and decreed that the plaintiffs shall not take the depositions of Mason Crickard and H. H. Epperly set by said plaintiffs for September 30, 1938, or the depositions of any other witnesses upon oral examination under Rule 26 of the Federal Rules of Civil Procedure, to which action and ruling of the Court the plaintiffs object and except; but nothing herein done shall prevent the plaintiffs, if they may be advised so to do, to take the testimony of said witnesses, Mason Crickard and H. H. Epperly, and any other witnesses, before George Richardson, Special Master, pursuant to the order of reference entered herein at such time and place as may be fixed by said Special Master."

### Law.

Section 21a of the Bankruptcy Act, 11 U.S.C.A. § 44(a), provides: "A court of bankruptcy may, upon application of any officer, bankrupt, or creditor, by order require any designated person, including the bankrupt and his wife, to appear in court or before a referee or the judge of any State court, to be examined concerning the acts, conduct, or property of a bankrupt whose estate is in process of administration under the provisions of this title * * *."

This section may be pursued in proceedings under Section 77B. In re Eastern Utilities Investing Corporation, D. C., 23 F.Supp. 719; In re Paramount Publix Corporation, 2 Cir., 82 F.2d 230.

The Charleston bank, together with numerous persons sought to be examined

under· the order, filed a motion that the order of August 12, 1938, be annulled and set aside. Should the motion be granted? Section 21a confers upon this court jurisdiction to exercise a sound discretion in the matter. Recently this court said: "The jurisdiction given this court by section 21a of the Act is the jurisdiction to exercise a wise judicial discretion". In re Eastern Utilities Investing Corporation, D. C., 23 F.Supp. 719, 723.

The trustee in bankruptcy objects to the Charleston Bank being heard upon its motion to set aside the order to examine Joseph A. Markel and other witnesses. It appears from the answer filed by the trustee that the examinations concern "the administration of the trust by the Charleston National Bank and Greyling Realty Corporation" and "are necessary for the enforcement of the rights assigned to National Bondholders Corporation". These rights were assigned to National Bondholders Corporation and are the subject matter of the two suits pending in West Virginia. The testimony of Markel, the only witness examined under the order, related solely to questions involved in those suits. Not a single question propounded to Markel had anything to do with the assets, goods or property of the debtor. The only parties who are interested in such examinations are the National Bondholders Corporation and Union Series Eye Corporation on the one hand and the Charleston Bank on the other. Under these facts the Charleston Bank is undoubtedly interested in such examinations and is entitled to be heard in opposition to the order.

The alleged claim against the Charleston Bank was known to the trustee in bankruptcy when the order of confirmation of the plan of reorganization of the debtor ·was entered August 8, 1935. This is apparent from the order. The suits by the National Bondholders Corporation and the Union Series Eye Corporation against the Charleston Bank were instituted in West Virginia in December, 1936. For nearly three years the trustee took no action seeking a 21a examination to investigate the alleged claim against the bank.

The District Court in West Virginia, for reasons deemed sufficient by it, held that National Bondholders Corporation was not entitled to a preliminary examination before trial. That court may have thought that National Bondholders Cor-

poration did not want to take depositions for use in the cases there pending but desired to conduct a "fishing expedition". Where suits are pending and a special master has been appointed and is available for the taking of the testimony of witnesses the propriety of ordering examinations under section 21a, which may not be used in the trial of the cases, is not sufficiently apparent to·induce this court to circumvent the action of the district court in West Virginia. From the record it is perfectly clear that the application, though ·made by the trustee and in his name, is at the instance of and for the benefit of National Bondholders Corporation and Union Series Eye Corporation, the plaintiffs in the West Virginia suits. If the suits in West Virginia yield amounts in excess of the bonds it will then be proper for the trustee in bankruptcy to pursue such surplus.

Accordingly, the court in the exercise of a sound discretion will set aside and vacate the order of August 12, 1938.