UNITED STATES of America,
Plaintiff,

v.

Louis L. SEIFFERT, Jr., Defendant.

Crim. No. 70-C-16.

United States District Court,
S. D. Texas,
Houston Division.

March 14, 1973.

Anthony J. P. Farris, U. S. Atty., Mary L. Sinderson, Henry J. Novak, Jr., Asst. U. S. Attys., Houston, Tex., for plaintiff.

James DeAnda, J. Robert McKissick, Edwards, Stone & DeAnda, Corpus Christi, Tex., for defendant.

## MEMORANDUM AND ORDER

CARL O. BUE, Jr., District Judge.

### I.

### THE FACTS

Defendant was chairman of the board of First State Bank of Aransas Pass, Texas, in 1969 when the bank failed and the Federal Deposit Insurance Corporation (FDIC) liquidated the bank's holdings. Thereafter, defendant filed voluntary petitions in bankruptcy for himself and the three corporations which he controlled. *See* In The Matter Of Louis L. Seiffert, Jr., et al., Bankruptcy Nos. 69–H–108, 69–H–109, 69–H–110 and 69–H–111 (S.D.Tex.). As is customary in bankruptcy proceedings, on December 10, 1969, the first meeting of creditors was held before the referee in bankruptcy, and defendant testified as the bankrupt. *Commencing on* February 9, 1970, defendant's deposition was taken primarily in connection with a claim by the FDIC on a fidelity bond.

### II.

### THE INDICTMENT AND CONVICTION

Shortly thereafter, defendant was indicted along with Luther Van Elliott, the ex-president of First State Bank, for misappropriating funds of a federally insured bank in violation of 18 U.S.C. § 656. Prior to trial co-defendant Elliott entered a guilty plea to one count of the multi-count indictment, and at the trial this accomplice was a witness for the Government. During the jury trial in the United States District Court at Corpus Christi, Texas, the Government apparently assumed that it was required to establish that no evidence used by it in prosecuting the criminal action was derived from the bankruptcy proceedings. As a result, Ben Donnell, an attorney who had represented the FDIC in the bankruptcy proceeding, and John Ryan, a special agent for the Federal Bureau of Investigation, testified at the behest of the Government that no investigative leads came from the bankruptcy proceedings. Further, Assistant United States Attorney Theo Pinson stated for the record that he knew of no evidence or leads derived from such proceedings.

Subsequently, defendant was found guilty by a jury of the offenses charged in counts 2, 3 and 4 of the indictment. A mistrial was entered as to counts 1 and 5. On September 30, 1971, defendant was sentenced to imprisonment for three years on each of the three counts with the sentences to run consecutively.

### III.

### THE APPEAL AND REMAND

On appeal, defendant's conviction was reversed and remanded with directions. The Fifth Circuit Court of Appeals determined that the 1970 Amendment to section 7(a)(10) of the Bankruptcy Act, 11 U.S.C. § 25(a)(10), was applicable to defendant. Reliance was placed upon Turner v. United States, 410 F.2d 837 (5th Cir. 1969).[1] As a result it was

---

1. *But see* United States v. Goodwin, 470 F.2d 893 (5th Cir. 1972). In *Goodwin* two corporate officers were convicted of concealing property of a bankrupt corporation in violation of 18 U.S.C. § 152. Defendants contended that the evidence which led to their convictions was derived from the bankruptcy proceedings in violation of section 7(a)(10) of the Bankruptcy Act, 11 U.S.C. § 25(a)(10), as amended in 1970. The Court indicated that it was uncontradicted that all of the Government's evidence was derived from the bankruptcy proceedings, but none of the bankruptcy testimony of the defendants as such was introduced. In other words, only derivative use was made of the testimony. It was then held that since the defendants testified in the bankruptcy proceedings in 1969 which was prior to the amendment of section 7(a)(10) of the Act, they were entitled only

held that defendant was entitled to both use and derivative use immunity. The Court indicated:

> That the amendment is applicable does not require a reversal. If the Government can affirmatively show that it did not directly or indirectly use Seiffert's bankruptcy testimony as a lead to other evidence his conviction must stand. The Government's attempt to do so at trial fell short of the mark. The prosecutor, the FBI agent who investigated the case, and the FDIC attorney all testified that they did not make direct nor indirect use of Seiffert's testimony. These conclusory statements are simply not enough to carry the burden . . . . The Government must show how it acquired all of the evidence admitted below.

463 F.2d at 1092. The Court delineated specific directions to the trial court as follows:

> Upon remand the district court shall conduct an inquiry to determine the source of the evidence introduced by the Government. If it was not acquired through the direct or indirect use of Seiffert's testimony, the conviction shall stand affirmed by this court as entered. If, however, any of the evidence is found to be tainted, the judgment of conviction shall be reversed and Seiffert granted a new trial.

463 F.2d at 1092.

### IV.

### THE BURDEN OF PROOF

[1–3] The Government must affirmatively prove that the evidence which was adduced at defendant's trial was not tainted. The initial inquiry becomes one of ascertaining the appropriate burden of proof to be employed in weighing the evidence forthcoming at the evidentiary hearing. It appears clear that the applicable legal standard can be delineated by looking to closely related areas. In Lego v. Twomey, 404 U.S. 477, 489, 92 S.Ct. 619, 626, 30 L.Ed.2d 618 (1972), the Supreme Court indicated that:

> To reiterate what we said in Jackson: when a confession challenged as involuntary is sought to be used against a criminal defendant at his trial, he is entitled to a reliable and clear-cut determination that the confession was in fact voluntarily rendered. Thus, the prosecution must prove at least by a preponderance of the evidence that the confession was voluntary.

As a result of the *Lego* decision it is well settled that the standard to be employed in deciding the issue of voluntariness of a proffered confession is that of a preponderance of the evidence. United States v. Britt, 460 F.2d 1023 (5th Cir. 1972); United States v. Watson, 469 F.2d 362 (5th Cir. 1972); United States v. Cluchette, 465 F.2d 749 (9th Cir. 1972); United States v. Collins, 462 F.2d 792 (2d Cir. 1972). Similarly, the preponderance of the evidence is the applicable standard for proving that investigative leads did not derive from illegal electronic eavesdropping. United States v. Cole, 463 F.2d 163 (2d Cir. 1972), cert. denied, 409 U.S. 942, 93 S.Ct. 238, 34 L.Ed.2d 193 (1973). The applicability of these decisions to the instant situation cannot be contested. *See* Kastigar

---

to use immunity. This Court notes with interest that section 260 of the Organized Crime Control Act of 1970, to which section 7(a)(10) was amended to conform, provides in no uncertain terms that:

> The provisions of part V of title 18, United States Code, added by title II of this Act, and the amendments and repeals made by title II of this Act, shall take effect on the sixtieth day following the date of the enactment of this Act. No amendment to or repeal of any provision of law under title II of this Act shall affect any immunity to which any individual is entitled under such provision by reason of any testimony or other information given before such day.

84 Stat. 931–32. The legislative history is not inconsistent with section 260. *See* H.Rep.No.91–1549, 91st Cong., 2d Sess., 1970 U.S.Code, Cong. & Admin.News, p. 4007 (1970). The Act by its own terms became effective on December 15, 1970. 84 Stat. 931–32, 962.

v. United States, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972); United States v. Nolan, 420 F.2d 552 (5th Cir. 1969), cert. denied, 400 U.S. 819, 91 S. Ct. 36, 27 L.Ed.2d 47 (1970).

## V.

### THE APPLICABLE STANDARD FOR PURPOSES OF THE EVIDENTIARY HEARING

█ In addition to the authorities set forth in the opinion of the Court of Appeals, it is helpful to state precisely the criteria determinative of the outcome of the proceedings in this Court. It is abundantly clear that as a result of the 1970 Amendment to the Bankruptcy Act no oral testimony or other information secured from a bankruptcy witness can be subsequently used against him in a criminal proceeding. The legislative history of the omnibus Organized Crime Control Act, to which section 7(a)(10) of the Bankruptcy Act, 11 U.S.C. § 25(a)(10), was amended to conform, reflects that:

Title II is a general Federal immunity statute that will afford "use" immunity rather than "transaction" immunity when a witness before a court, grand jury, Federal agency, either House of Congress, or a congressional committee or subcommittee, asserts his privilege against self-incrimination. It is contemplated that the title will enable effective displacement of the privilege against self-incrimination by granting protection coextensive with the privilege; that is, protection against the use of compelled testimony directly or indirectly against the witness, in a criminal proceeding.

H.Rep.No.91–1549, 91st Cong., 2d Sess., U.S.Code, Cong. & Admin.News, p. 4008 (1970).

Section 201 of the Organized Crime Control Act of 1970 was recently interpreted in Kastigar v. United States, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). In *Kastigar* it was held that:

The statute's explicit proscription of the use in any criminal case of "testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information)" is consonant with Fifth Amendment standards. We hold that such immunity from use and derivative use is coextensive with the scope of the privilege against self-incrimination, and therefore is sufficient to compel testimony over a claim of the privilege. While a grant of immunity must afford protection commensurate with that afforded by the privilege, it need not be broader. Transactional immunity, which accords full immunity from prosecution for the offense to which the compelled testimony relates, affords the witness considerably broader protection than does the Fifth Amendment privilege. The privilege has never been construed to mean that one who invokes it cannot subsequently be prosecuted. Its sole concern is to afford protection against being "forced to give testimony leading to the infliction of 'penalties affixed to . . . criminal acts.'" Immunity from the use of compelled testimony and evidence derived directly and indirectly therefrom affords this protection. It prohibits the prosecutorial authorities from using the compelled testimony in *any* respect, and it therefore insures that the testimony cannot lead to the infliction of criminal penalties on the witness.

406 U.S. at 453, 92 S.Ct. at 1661, 32 L. Ed.2d at 222.

█ The Court indicated that its decision was entirely consistent with an earlier decision, Counselman v. Hitchcock, 142 U.S. 547, 12 S.Ct. 195, 35 L. Ed. 1110 (1892), since the immunity afforded by 18 U.S.C. §§ 6002–03, as does 11 U.S.C. § 25(a)(10), would not permit the use of the compelled testimony to search out other testimony to be subsequently used in a criminal proceeding. Similarly, the statute would preclude the obtaining and use of witnesses

and evidence which were directly attributable to the compelled testimony. Further, the statute precludes the use of the compelled testimony to gain knowledge of the details of the crime and sources of information which would supply other means of convicting the witness in a subsequent criminal proceeding. 406 U. S. 414, 92 S.Ct. 1653, 32 L.Ed.2d at 222. *See* Ullmann v. United States, 350 U.S. 422, 76 S.Ct. 497, 100 L.Ed. 511 (1956).

The *Kastigar* Court further indicated that:

> This total prohibition on use provides a comprehensive safeguard, barring the use of compelled testimony as an "investigatory lead," and also barring the use of any evidence obtained by focusing investigation on a witness as a result of his compelled disclosures.

406 U.S. at 460, 92 S.Ct. at 1664, 32 L. Ed.2d at 226. *See* Albertson v. Subversive Activities Control Board, 382 U.S. 70, 86 S.Ct. 194, 15 L.Ed.2d 165 (1965). Further, with regard to the Government's burden of proof it was expressed in *Kastigar* that:

> This burden of proof, which we reaffirm as appropriate, is not limited to a negation of taint; rather, it imposes on the prosecution the affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony.

406 U.S. at 460, 92 S.Ct. at 1665, 32 L. Ed.2d at 226.

In Murphy v. Waterfront Commission, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964), the Supreme Court indicated that the Fifth Amendment's self-incrimination provision precludes the compulsion of testimony unless the compelled testimony and its fruits are barred in subsequent criminal proceedings. It was indicated that the exclusionary rule, while permitting law enforcement officers to secure information necessary for effective law enforcement, leaves the witness and the Government in substantially the same position as if the witness

had claimed the privilege in the absence of immunity.

■ The constitutional rule with regard to the use of tainted evidence is stated in Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). In *Wong Sun* it was indicated that the proper test of admissibility of suspect evidence was "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." 371 U.S. at 488, 83 S.Ct. at 417. *See* Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L. Ed. 307 (1939); Baker v. United States, 139 U.S.App.D.C. 126, 430 F.2d 499, cert. denied, 400 U.S. 965, 91 S.Ct. 367, 27 L.Ed.2d 384 (1970); United States v. Brown, 317 F.Supp. 531 (E.D.La.1970), appeal dismissed, 456 F.2d 1112 (5th Cir. 1972); 3 C. Wright, Federal Practice and Procedure §§ 675, 677 (1969).

## VI.

## THE SCOPE OF THE IMMUNITY PROVISION OF THE BANKRUPTCY ACT

■ Section 7(a)(10) of the Bankruptcy Act of 1898, 11 U.S.C. § 25(a)(10), provides that the bankrupt shall:

> [A]t the first meeting of his creditors, at the hearing upon objections, if any, to his discharge and at such other times as the court shall order, submit to an examination concerning the conducting of his business, the cause of his bankruptcy, his dealings with his creditors and other persons, the amount, kind, and whereabouts of his property, and, in addition, all matters which may affect the administration and settlement of his estate or the granting of his discharge; but no testimony given by him shall be offered in evidence against him in any criminal proceeding, except such testimony

as may be given by him in the hearing upon objections to his discharge . . . .

In 1970 the Organized Crime Control Act of 1970, 84 Stat. 922, was enacted. The statutory scheme included an addition to the criminal code in the form of specific provisions setting forth a general immunity of witnesses, 18 U.S.C. §§ 6002–05. As previously indicated this statute granted immunity to witnesses who are compelled to give testimony which is comparable to the immunity of the Fifth Amendment's self-incrimination clause. In order to conform other immunity statutes to this new statute, various other provisions were amended. This included the immunity provision of section 7(a)(10) of the Bankruptcy Act, 11 U.S.C. § 25(a)(10). Section 207 of the Organized Crime Control Act of 1970 amended the immunity provision of 11 U.S.C. § 25(a)(10) to provide that:

> [B]ut no testimony, or any evidence which is directly or indirectly derived from such testimony, given by him shall be offered in evidence against him in any criminal proceeding . . . .

11 U.S.C. § 25(a)(10) (1973 Supp.). As a result, witnesses in bankruptcy proceedings are entitled to both use and derivative use immunity as to any statutorily compelled testimony.

The statutory scheme reflects that in order to assist all concerned in the orderly and efficient administration of the bankrupt's property various duties are placed upon a bankrupt. Among those duties section 7 (a)(10) of the Act, 11 U.S.C. § 25(a) (10), provides for the mandatory attendance of the bankrupt to give testimony on three separate occasions. First, compulsory attendance is provided for at the first meeting of creditors. See 1A Collier on Bankruptcy ¶ 7.03 [1], 7.16 (14th Ed. 1972). Second, attendance is required at the hearing upon objections to the bankrupt's discharge. See 1A Collier on Bankruptcy ¶ 7.16, 14.10 (14th Ed. 1972). Third, the bankrupt is required to be present at other hearings as the court may direct. See 1A Collier on Bankruptcy ¶ 7.03[3], 7.17, (14th Ed. 1972); 2 Collier on Bankruptcy ¶ 21.06 (14th Ed. 1972); In re Union Mortg. Inv. Co., 25 F.Supp. 468 (D.Del.1938); In re Standard Gas & Electric Co., 54 F.Supp. 752 (D.Del.1944). Failure to timely appear at any of these situations will subject the bankrupt to specific penalties under the Act including contempt and waiver of his right to a discharge. The statute grants testimonial immunity with reference to the first and third compelled appearances of the bankrupt. It is basic that the bankrupt cannot be compelled to testify unless the Act imposes upon him a duty to do so, and it is only in those enumerated situations that testimonial immunity is provided. As a result, the testimony elicited in such instances cannot be offered in evidence against the witness in subsequent criminal proceedings. Ensign v. Pennsylvaia, 227 U.S. 592, 33 S.Ct. 321, 57 L.Ed. 658 (1912); Goldstein v. United States, 11 F.2d 593 (5th Cir.) cert. denied, 271 U.S. 667, 46 S.Ct. 483, 70 L. Ed. 1141 (1926).

There are inherent limitations as to the permissible scope of statutorily compulsory examinations of the bankrupt as a result of Court order provided for in section 7(a)(10) and section 21 of the Act. See 2 Collier on Bankruptcy § 21.11 (14th Ed. 1972). Notwithstanding the fact that a creditor can seek an order compelling the bankrupt to give testimony, any such order is subject to the discretion of the Court. See 2 Collier on Bankruptcy §§ 21.06, 21.08 (14th Ed. 1972). This discretion is generally exercised to preclude Court ordered examinations of the bankrupt which simply serve to aid creditors in bolstering their claims against the bankrupt. See 2 Collier on Bankruptcy § 21.11 (14th Ed. 1972).

The Bankruptcy Act, however, in order to fill this vacuum, makes explicit provision for other forms of discovery or examination of the bankrupt

by creditors, but such procedure does not require the bankrupt to give compelled testimony. Instead, section 21(b) of the Bankruptcy Act, 11 U.S.C. § 44(b), provides that the same rules, Rules 26, 30, 32, 37, Fed.R.Civ.P., which govern the taking of depositions in civil actions are equally applicable to bankruptcy proceedings. *See* Bankruptcy General Order 37; Georgia Jewelers, Inc. v. Bulova Watch Co., 302 F.2d 362 (5th Cir. 1962); In the Matter of American Anthracite & Bituminous Coal Corporation, 22 F.R.D. 504 (S.D.N.Y. 1958); In re Coronet Metal Products Corporation, 81 F.Supp. 500 (S.D.N.Y. 1948); 8 C. Wright and A. Miller, Federal Practice and Procedure §§ 2101, 2286 (1970). As a result, the immunity provision of section 7(a)(10) is inapplicable to voluntary deposition testimony given by a bankrupt. *See* United States v. Castellana, 349 F.2d 264 (2d Cir. 1965), cert. denied, 383 U.S. 928, 86 S. Ct. 934, 15 L.Ed. 847 (1966).

■ In unequivocal language section 7(a)(10) of the Act provides that "no testimony, or any evidence which is directly or indirectly derived from such testimony" shall be employed in a subsequent criminal proceeding. As a result, it appears that the immunity under section 7(a)(10) relates only to the oral testimony of the bankrupt and does not encompass documents and records of the bankrupt. As a result, the section does not displace the Fifth Amendment's privilege against compulsory self-incrimination insofar as such records are concerned. However, if the bankrupt voluntarily surrenders his books and records without protest or claim of constitutional privilege, it can be concluded that he has effectively waived the privilege. *See* Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); United States v. Goodwin, 470 F.2d 893 (5th Cir. 1972); United States v. Hoyt, 53 F.2d 881 (S.D.N.Y.1931). ■ This conclusion is bolstered by section 70(a) of the Act, 11 U.S.C. § 110(a), which provides that upon filing of the voluntary petition in bankruptcy the trustee takes title to, and acquires a right to immediate possession of, the bankrupt's property, including records, for the benefit of all creditors. As a result, the books of a bankrupt in the possession of the trustee or receiver are clearly not testimony within the meaning of the statute. Ensign v. Pennsylvania, 227 U.S. 592, 33 S.Ct. 321, 57 L. Ed. 658 (1912); Arine v. United States, 10 F.2d 778 (9th Cir. 1926). Accordingly, the bankrupt's constitutional immunity precluding the use of his books in a criminal proceeding ceases as soon as they are duly taken out of his possession and control as a result of either an order directing their delivery to the receiver or by the passing of the books to the trustee pursuant to section 70 of the Act, 11 U.S.C. § 110. In Dier v. Banton, 262 U.S. 147, 150, 43 S.Ct. 533, 534, 67 L.Ed. 915 (1923), it was indicated that:

> [The bankrupt] has lost any right to object to their use as evidence because, not for purpose of evidence, but in the due investigation of his alleged bankruptcy, and the preservation of his estate pending such investigation, the control and possession of his books and papers relating to his business were lawfully taken from him.

*Accord* McCarthy v. Arndstein, 266 U.S. 34, 45 S.Ct. 16, 69 L.Ed. 158 (1924); Ex Parte Fuller, 262 U.S. 91, 43 S.Ct. 496, 67 L.Ed. 881 (1923). *See* Couch v. United States, 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973); 11 U.S.C. § 110.

Notwithstanding the inapplicability of the immunity dictate of section 7(a) (10) to documents, it appears, however, that the bankrupt can invoke the immunity to preclude compelled examination with reference to the documents. *See* In re Bleecker, 14 F.2d 1018 (S.D. N.Y.1925), aff'd, 14 F.2d 1019 (2d Cir. 1926). Similarly, if the compelled testimony of the bankrupt led to the search of records which were subsequently employed in a criminal prosecution, the statutory immunity might be applicable.

## VII.

### THE SOURCE OF THE GOVERNMENT'S TRIAL EVIDENCE

In order to probe the source of each trial witness and each item of documentary evidence employed at the trial, the various Government agents who participated in the investigation which led to the indictment and prosecution of the defendant testified at the evidentiary hearing in this Court. The Government examined in detail the source of each exhibit introduced at the trial as well as each witness who testified at the trial. As a result of this testimony, including the cross-examination of these witnesses by the defendant, the ultimate source of the Government's trial evidence has been identified with reasonable certainty.

▮▮▮ The testimony of a special agent for the Federal Bureau of Investigation, John Ryan, reflects that all the witnesses who testified at the trial were interviewed by this agent prior to December 5, 1969, with the exception of accomplice Luther Van Elliott and Edwin D. Richmond, Jr. As ex-president of the defunct First State Bank, Elliott was contacted prior to the latter date, but was not actually interviewed until January 22, 1970. The reason for special agent Ryan's initial contact of these witnesses is readily identifiable. Some of the witnesses were involved in highly suspect loan transactions with the defendant, and one witness was the president of a savings and loan association in which defendant had an interest.[2] One witness, Quinton Thompson, was the regional director of the FDIC who initiated the investigation of defendant, contacted the Federal Bureau of Investigation and subsequently discussed in detail the transactions involved in the indictment with special agent Ryan prior to the bankruptcy proceedings.[3] Although there was no direct evidence presented at the evidentiary hearing reflecting the source of the trial testimony of witness Richmond, ample circumstantial evidence is found in the record. Witness Richmond was a member of the board of directors of the defunct bank and was contacted as a result of certain suspicious loan transactions involving other bank directors as the investigation of the FDIC progressed.[4]

Similarly, the source of all trial exhibits was established by the testimony of special agent John Ryan and the Assistant United States Attorney, Theo W. Pinson, who prosecuted the criminal action. The testimony reflects that trial exhibits numbered 1 to 109 were derived from the records of the defunct bank, which were in possession and custody of the FDIC liquidator, James DuVall, or from the various witnesses at the time they were interviewed. Trial exhibits numbered 110 to 118, which were introduced on cross-examination of defendant, were in the possession of the bankruptcy trustee prior to the first meeting of creditors.

Although defendant was not interrogated with reference to these exhibits at the first meeting of creditors, he was examined concerning these documents at the subsequent deposition which was conducted by attorneys for the FDIC.[5] The prosecutor conceded that his scrutiny of the latter deposition testimony of defendant precipitated his locating trial exhibits numbered 110–18 and subse-

2. *See* Government's Exhibit No. 3.

3. *See* Government's Exhibit No. 3, at 2; Testimony of FDIC liquidator, James DuVall and FBI special agent, John Ryan.

4. *See* Government's Exhibit No. 3; Government's Trial Exhibit No. 109 (identified at the evidentiary hearing by FBI special agent Ryan); Trial Transcript, at 875–87; Testimony of FDIC liquida- tor, James DuVall. The Court also concludes that, even assuming arguendo that the identity or the substance of the testimony of this witness was discovered as a result of the bankruptcy testimony, the trial testimony of this witness was harmless error beyond a reasonable doubt. *See* United States v. Marder, 474 F.2d 1192 (5th Cir. 1973).

5. *See* Defendant's Exhibit Nos. 4, 5, 6, 11A–H.

quently introducing them into evidence at the trial for purposes of fortifying the establishment of defendant's criminal intent.

The investigative lead in the form of defendant's deposition, if it was, in fact, a lead, does not taint the Government's trial evidence, since it is apparent that the deposition was taken by agreement of the bankrupt and the FDIC attorneys. The deposition was obviously not part of the first meeting of creditors, as no order was issued by the referee in bankruptcy pursuant to section 7(a)(10), 11 U.S.C. § 25(a)(10), or section 21(a), 11 U.S.C. § 44(a), which would have compelled defendant to give involuntary testimony.[6] Additionally, since defendant was not examined with reference to these documents at the first meeting of creditors and since these documents were legally in the possession and custody of the trustee in bankruptcy, they were not subject to the immunity provision of section 7(a)(10), 11 U.S.C. § 25(a)(10). Further, it is noteworthy that defendant obviously gave no incriminating testimony about these documents at that meeting.

The Court also feels it relevant to point out that special agent Ryan and FDIC liquidator DuVall had discussed in detail each of the criminal acts contained within the indictment in September and October of 1969.

## VIII.

## CONCLUSION

The Court finds by a preponderance of the evidence after viewing the totality of the facts presented at the evidentiary hearing that the Government did not directly or indirectly use defendant's bankruptcy testimony as a lead to other evidence which was subsequently employed at the trial. The conclusion is inevitable that defendant's bankruptcy testimony was not used to search out other testimony subsequently used at defendant's trial. Similarly, no witness or other evidence was obtained which was attributable to the defendant's bankruptcy testimony. Further, a review of the transcript of such testimony clearly reveals that it was not used to ascertain knowledge of the details of the crime and sources of information which would supply other means of convicting the defendant. In conclusion, the evidence presented to this Court unqualifiedly supports the conclusion that none of the Government's case was tainted as a result of any illegal use of defendant's bankruptcy testimony.

Accordingly, pursuant to the instructions contained in the opinion of the Court of Appeals, defendant's conviction stands affirmed. The clerk will notify counsel.

[redacted]

6. *See* Defendant's Exhibit No. 13 (transcript of the testimony before the first meeting of creditors), at 209, 211–12.