Peter S. ESPIEFS

v.

John Alden SETTLE, Jr., et al.

No. 80–446–L.

United States District Court,
D. New Hampshire.

Aug. 17, 1981.
Order On Appeal Sept. 18, 1981.

Philip Mangones, Keene, N. H., for Sheriff Kenneth Lysitt.

Peter Espiefs, Keene, N. H., is the Trustee of Bankrupt John Alden Settle, Jr. individually and d/b/a Springfield Electronics (Bankrupt).

Ernest L. Bell, III, Esq., Keene, N. H., for Peter S. Espiefs.

John Alden Settle, Jr., pro se.

## ORDER ON APPEAL TO DISTRICT COURT

LOUGHLIN, District Judge.

Presently pending in this court is an appeal which was filed by defendants on March 18, 1981. The procedural history of this case is quite complex. The court will not attempt in this order to entirely review that history. The court rather refers the parties to its Order on Preliminary Findings From the Record as Available, which was issued on January 21, 1981. In that order, this court requested the Bankruptcy Court to advise it of the disposition of the pending motions before the Bankruptcy Court, particularly the defendants' Motion to Reconsider. The Bankruptcy Court was also requested to furnish this court with its Findings of Fact and Rulings of Law as made on January 4, 1981.

By order dated March 6, 1981, the Bankruptcy Judge denied defendants' Motion for Reconsideration. The Bankruptcy Court in that order of March 6, 1981 also issued decisions on several other pending motions. (See Docket Marking # 51). In an order issued April 20, 1981, the Bankruptcy Court granted plaintiff, Trustee Espiefs', Motion Re Contempt. In an order also issued on April 20, 1981, the Bankruptcy Court granted plaintiff's Motion for Supersedeas Bond in the amount of $50,000.00. The bond was to be posted on or before May 7, 1981.

In its ten page order dated March 5, 1981 (see Docket Marking # 52) the Bankruptcy Court set forth the testimony which was given and exhibits which were presented and the three day hearing which took place December 30, 1980 through January 2, 1981. The order also sets forth as per the request of this court the Findings of Fact and Rulings of Law which the Bankruptcy Court made as a result of this hearing, culminating in the Bankruptcy Court's issuance of a default judgment at the close of the hearing on January 2, 1981. The Bankruptcy Court issued a decree in favor of Peter Espiefs, Trustee on January 6, 1981. The order also sets forth as per the request of this court the Findings of Fact and Rulings of Law which the Bankruptcy Court made as a result of this hearing, culminating in the Bankruptcy Court's issuance of a default judgment at the close of the hearing on January 2, 1981. The Bankruptcy Court issued a decree in favor of Peter Espiefs, Trustee on January 6, 1981.

This court has read and reviewed the transcript comprising over four hundred pages. In addition, the court has reviewed the findings and rulings of the Bankruptcy Court relative to the disputed assets. The court has also been provided with and has reviewed a copy of the decree of the Bankruptcy Court issued on January 6, 1981. That decree granted all of Trustee's Requests for Findings of Fact and all of Trustee's Requests for Rulings. In their Notice of Appeal to the District Court filed on March 18, 1981 (see Docket # 53), defendants designate the entire record as the record on appeal and specifically raise the issues of the absence of a transcript, whether the findings are contrary to the weight of evidence and erroneous whether possession is equivalent to title for bankruptcy purposes and whether irreparable harm has

been caused defendants because of the disposition of their personal property. This court provided the defendants a copy of the transcript without charge.

It should be noted at this time that subsequent to this court's order of January 21, 1981 defendants appealed parts of that order to the First Circuit Court of Appeals. In a judgment entered on March 23, 1981 by the First Circuit and filed in this court on April 14, 1981 (See Docket # 55), the Circuit Court affirmed this court's order dated November 21, 1980 which had ordered that the scheduled hearing before the Bankruptcy Judge on the proper ownership of property subject to turnover orders should go forward. This resulted in the hearing previously alluded to on December 30, 1980 through January 2, 1981. The First Circuit had previously in a Memorandum and Order entered December 29, 1980 (See Docket # 36) denied without prejudice the defendants' request for a stay of bankruptcy proceedings pending appeal and denied the defendants' request for summary reversal of this court's November 21, 1980 order. In the December 29, 1980 order the First Circuit stated:

> Appellants assert they will suffer irreparable harm if their property is sold or disposed of pending appeal, but a hearing on whether such sale or disposition should be ordered will not be held until December 30, 1980. If the bankruptcy judge orders such measures at that time, appellants will be free then to seek relief, should such be appropriate, to avert the irreparable harm they allege. Furthermore, many if not all of appellants' claims can be presented to the bankruptcy judge at the December 30 hearing, thus creating a more meaningful record and allowing the entry of reviewable findings and rulings, now lacking.

In the judgment entered on March 23, 1981 the First Circuit also dismissed for lack of appellate jurisdiction the claim raised by defendants February 2, 1981 notice of appeal to the First Circuit. The court granted defendants motion to consolidate the notice of appeal filed February 2, 1981 with the notice filed on December 17, 1980. In that order the Circuit Court stated:

> Both of appellant's notices of appeal are directed in one form or another toward the underlying claim that the bankruptcy court has erred in its rulings on the disputed assets. However, no aspect of this claim has been ruled upon by the district court. The record clearly reveals that most of those claims, if not all, have not yet been fully presented to that court. We further find that the first notice of appeal—from the district court's denial of the preliminary injunction—is, if not moot, than certainly lacking in overall merit. The central predicate for the debtor's injunctive request (prohibiting the trustee from disposing of the property) was that in the original actions taken against him he was entirely deprived of the opportunity to be heard. Despite the appellant's new claims that the procedure which was followed in the subsequent hearings is also defective, the truth is that a hearing has in fact been held. This factor undercuts the foundation of appellant's initial premise and demonstrates that the district court did not abuse its discretion in denying the request. In any event the district court has informed the trustee that he is expected not to dispose of the disputed property until it has been placed in a position to review the propriety of such action. See Order of February 19, 1981. As a consequence of all these developments, there is no reason to disturb the district court's order of November 21, 1980.

The First Circuit has clearly stated that whether the hearing was held properly, whether the conclusions reached therein were correct and whether it is the debtor or the trustee who is correct on the status of the disputed assets are matters which are properly the subject of the appeal to this court. There are no appeals in this action presently pending before the First Circuit.

The basic underlying complaint in this appeal is that the Bankruptcy Court has erred relating to rulings on disputed assets, the ruling being adverse to the interests of defendant and intervenors. Defendants

filed the voluntary bankruptcy petition (BK # 79–138) on March 30, 1979. Thus, the Bankruptcy Act prior to the 1978 Amendments to the Act governs this action or is apposite to this case. Rule 810 of the Bankruptcy Procedure Rules states:

Upon an appeal the district court may affirm, modify or reverse a referee's judgment or order, or remand with instructions for further proceedings. The court shall accept the referee's findings of fact unless they are clearly erroneous, and shall give due regard to the opportunity of the referee to judge of the credibility of the witnesses.

Rules Bankr.Proc. Rule 810, 11 U.S.C.A.

The burden of showing a bankruptcy referee's findings to be clearly erroneous has been found to be a stringent one and to be convinced the court must be left with a definite and firm conviction that mistake has been committed, that is the court must find that no testimony exists for support of referee's order, or that he has acted arbitrarily or capriciously. *In re Knight*, 421 F.Supp. 1387, 1390 (M.D.La.1976); aff'd 551 F.2d 861, 862 (1977); *See United States v. United States Gypsum Co.*, 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1947).

 This court recognizes, however, that while it is bound to accept the bankruptcy judge's findings of fact unless they are clearly erroneous, the clearly erroneous rule does not apply to questions of law or to mixed questions of fact and law. The court in this action makes an independent determination of the law. *In re Werth*, 443 F.Supp. 738, 739 (D.Kan.1977).

 Turnover orders must be supported by "clear and convincing evidence". *Oriel v. Russell*, 278 U.S. 358, 49 S.Ct. 173, 73 L.Ed. 419 (1929). That includes proof that the property has been abstracted from the bankrupt estate and that it is in the possession of the party proceeded against. The burden is upon the trustee to produce this evidence. *Maggio v. Zeitz*, 333 U.S. 56, 64, 68 S.Ct. 401, 405, 92 L.Ed. 476 (1948).

 However, in appealing an order of the Bankruptcy Court, the burden of proof is upon the party seeking reversal of the findings of the bankruptcy court, here the defendant-appellant. Defendant must show that the findings were clearly erroneous and not merely that the bankruptcy court could have reached another conclusion based upon the testimony presented. *In re Windor Industries, Inc.*, 459 F.Supp. 270 (N.D.Tex.1978). Plaintiff on appeal initially raised the issues of the absence of a transcript whether the findings were contrary to the weight of evidence and erroneous, whether possession was equivalent to title for bankruptcy purposes and whether irreparable harm had been caused defendants because of the disposition of their personal property.

In a notice of appeal to District Court which was filed by defendant appellants on April 30, 1981, the following orders of the Bankruptcy Judge which were entered on April 20, 1981 were also appealed: Trustee's "Motion re Contempt"; Trustee's "Motion for Supersedeas Bond" and Trustee's "Motion to Deny in Forma Pauperis Status".

It is also interesting to note that the defendant appealed two adverse decisions without success to the New Hamsphire Supreme Court directly or indirectly related to this voluntary petition in bankruptcy.

The first case chronologically in time was *Settle v. Keene Savings Bank*, 120 N.H. 827, 423 A.2d 986 (1980) which was an appeal from an order granting the defendant's motion for summary judgment under RSA 491:8a (Supp.1979).

The case involved a foreclosure of real estate. The plaintiff claimed an equitable interest therein in filing his petition for bankruptcy.

The second New Hampshire Supreme Court case was decided as recently as May 11, 1981. *Settle v. Settle*, 430 A.2d 172 (N.H.1981).

This was an appeal from a finding of contempt involving a divorce action between Cynthia his third wife, nee Meyer, and the defendant because of his failure to deliver property to the plaintiff in accordance with the divorce decree.

In the per curiam decision the following was culled from an appendix from an order of (Betley, J.) bankruptcy judge.

"The court is constrained to observe that here we have a bankrupt, John Alden Settle, Jr. who has meticulously planned, prior to March 30, 1979, how to secrete his assets from his creditors and the trustee in bankruptcy, by arranging for storage facilities for his valuable personal property . . . resorting to the use of an alias . . . , hoping that he could this way elude detection and discovery on this secreted property. The bankrupt claims 'irreparable harm by virtue of the court's ex-parte orders permitting the trustee to collect this secreted property.' By virtue of these ex-parte orders, the trustee was able to corral this valuable property and avoid 'irreparable harm to his creditors.' "

The New Hampshire Supreme Court also made the following comments and assessed attorneys' fees.

Needless to say, we also are not persuaded by the defendant's alleged concern for the protection of the trustee's or creditors' rights and find that it is simply a sham designed to interfere with the orderly process of litigation.

We award the plaintiff attorney's fees in the amount of $300 under our Rule 23.

This court has alluded to the decisions of the New Hampshire Supreme Court to show the litigious nature of the defendant John Alden Settle, Jr. He has also filed a myriad of other suits in other jurisdictions such as Vermont and Massachusetts.

Intermingled in the appeal to this court are a plethora of pleadings filed on different dates.

This court, as stated, reviewed the transcripts. In culling through and reviewing the testimony, it is evident even from the cold record that John Settle, Jr. deliberately attempted to bait, goad and obfuscate the bankruptcy judge with dilatory, insulting and frivolous tactics, for example accusing on more than one occasion a witness of lying even when the judge remonstrated with him about his behavior.

On occasion and understandably, the baiting and goading did elicit untoward comments from the court which in general acted with admirable restraint. Twice John Settle was cited for contempt and narrowly avoided a third contempt citation.

Defendants complain about closed door sessions and being locked out. Fortunately, the record of January 2, 1981 bears out the falsity of these allegations and the court quotes from said record.

The Court: We will take a 5-minute recess at this time.

(Whereupon there is a brief recess.)

MR. BELL: Your honor, I note that it is 2 minutes of 4 and it is fully 5 minutes after you declared the recess. Mr. Settle is not here. It was reported to me that he was observed walking into the Ashfield National

THE COURT: Let's wait for him to come in here.

MR. BELL: If your Honor please, it's 5 after 4. I would move that Mr. Settle be defaulted and that the relief prayed for by the trustee be granted by failure of his ability to return, and that all of this property in question be—I would move that all of the trustee's requests be granted, particularly—I see he's outside now.

THE COURT: Make the motion, anyway.

MR. BELL: I move that the property in Keene, the property in Vermont, the property in Massachusetts, and the property in Connecticut be disencumbered of any claim of Mr. Settle or any of his relatives including his daughter, Joanna, and his wife, and that all of his property be disencumbered of any claim of these people and awarded to the trustee; that is, specifically the property set forth in Trustee's 21, Trustee's 22, and the rug that has been testified to as being in West Hartford, and the material that we have observed in the back of Raleigh Clark's Northeast Outfitter's, and anything else we have asked for including the property in New York. I'd move that that order be entered forthwith.

THE COURT: Would you state for the record how long we waited?

MR. BELL: Your Honor, I believe we resumed at 10 minutes of. It is now 7

minutes after 4 and Mr. Settle is not in the courtroom. My client's trustee reported he went to the Ashfield Bank.

THE COURT: Let the record show that every time a recess is called either by the request of the stenographer or otherwise, a time is specified in which the court will resume hearing, and at all times Mr. Settle does not arrive on time. He is usually 10 or 15 minutes late. It was specifically stated in the recess for the stenographer to make a change that the recess would be 5 minutes. It is now more than 15 minutes and therefore I will grant the motion of Brother Bell that all the property requested by the trustee be vested to the trustee and disencumbered from any of the rights of his wife and child.

The allegations of Anne F. Settle's ill health was never medically verified. Reference is made to page 7 of the order and findings of fact of (Betley, J.). Further reference is made to the record of the hearing on January 2, 1981 when John A. Settle, Jr. requested a continuance on the grounds that Ann F. Settle was ill.

MR. BELL: Is there any authorization attached to yours, your Honor? There was none attached to mine.

THE COURT: Nothing just these slips here from Cheshire Hospital.

MR. SETTLE: On Paragraph 6 of Page 2, your Honor, there is an original signature at the authorization. Under the liberal rules of pleading, that would constitute her signature on the document and an authorization for release of records.

THE COURT: Well, Mrs. Settle is not in the hospital at this time.

MR. SETTLE: Oh, yes, she is, your Honor; that's exactly where she is, and she so states.

MR. BELL: It does not state it so in here, your Honor; there is no Statement that she is in the hospital.

THE COURT: It doesn't state that all, sir.

MR. BELL: She has been attended by physicians at the Cheshire Hospital Keene Clinic. It doesn't say she is admitted.

MR. SETTLE: I couldn't give her room number, your Honor. She is at this very moment with a physician at the Cheshire Hospital; it so states in Paragraph 5.

MR. BELL: There is nothing here under oath, either your Honor; nothing over her signature or anybody's.

MR. SETTLE: I would think that's required under the circumstances, Mr. Bell.

MR. BELL: Well, I ___

MR. SETTLE: She can't be here to swear.

THE COURT: I deny the Motion for Continuance You may proceed.

The defendants have raised the issues relating to their respective pleading of the Fifth Amendment and the insistence of the court that they answer questions regardless of the claim of privilege. From examining the record, this court cannot find that they answered questions after pleading the Fifth Amendment.

The question is not moot because John A. Settle, Jr. was twice held in contempt for refusal to answer. He was fined a total of $500.00.

One contempt citation was for refusal to state where alleged bankrupt property was stored. The other was whether he was at a business establishment on May 11, 1979. In the latter case, he alleged that he refused to answer because of a pending indictment against him relating to this issue. He never presented evidence to the court relating to the alleged indictment.

This court addresses the issue of the Fifth Amendment claim and the bankruptcy court's rulings thereon.

The Bankruptcy Act, 11 U.S.C. § 25(a)(10) specifically compels disclosure of alleged bankrupt property as one of the duties of the bankrupt:

(10) at the first meeting of his creditors, at the hearing upon objections, if any, to his discharge and at such other times as the court shall order, *submit to an examination concerning* the conduct-

ing of his business, the cause of his bankruptcy, his dealings with his creditors and other persons, the amount, kind, and whereabouts of his property, and in addition all matters which may affect the administration and settlement of his estate or the granting of his discharge;

In addition, the section grants immunity from the use of any testimony in any criminal proceedings:

> . . .but no testimony, or any evidence which is directly or indirectly derived from such testimony, given by him shall be offered in evidence against him in any criminal proceeding, except such testimony as may be given by him in the hearing upon objections to his discharge.

The immunity granted by this section is commonly called "use immunity" or "derivative use immunity". Witnesses in bankruptcy proceedings are entitled to both use and derivative use immunity as to any statutorily compelled testimony. *U. S. v. Seiffert*, 357 F.Supp. 801 (S.D.Tex.1973) affirmed in part, remanded in part on other grounds 501 F.2d 974 (5th Cir. 1974). Use and derivative use immunity grants immunity from use of compelled testimony and evidence derived therefrom. *Block v. Consino*, 535 F.2d 1165 (9th Cir. 1976) cert. denied 429 U.S. 861, 97 S.Ct. 165, 50 L.Ed.2d 140 (mem.1976). Therefore, defendant has been accorded the protection of immunity by statute and can be compelled to respond by the court.

*Matter of North American Inv. Co.*, 559 F.2d 464 (7th Cir. 1977) held that the Bankruptcy Act's grant of immunity (to effect that no testimony or any evidence which was directly or indirectly derived from such testimony, given by witness was to be offered in evidence against him in any criminal proceedings) was coextensive with privilege under U.S.C.A.Const. Amend. 5. See also *U. S. v. Weiner*, 578 F.2d 757 (9th Cir. 1978), cert. denied, 439 U.S. 981, 99 S.Ct. 568, 58 L.Ed.2d 651 (mem.1978) rehearing denied 439 U.S. 1135, 99 S.Ct. 1060, 59 L.Ed.2d 98 (mem.1979); *U. S. v. Seiffert*, 463 F.2d 1980 (5th Cir. 1972) on remand 357 F.Supp. 801. In *U. S. v. Moss*, 562 F.2d 155

(2d Cir. 1977), cert. denied 435 U.S. 914, 98 S.Ct. 1467, 55 L.Ed.2d 505 (mem.1978). Compelled testimony obtained in previous bankruptcy proceedings was constitutionally justified only because use immunity granted, including prohibition against derivative use, was deemed coextensive with the constitutional privilege against self-incrimination.

■ In accordance with the above cited case law and 11 U.S.C. § 25(a)(10) of the Bankruptcy Act, this court finds defendant's fifth amendment rights were not violated by the court's insistence that the allegedly self-incriminating questions be answered. Defendant's rights are protected by the use immunity grant in the statute; therefore, it is unnecessary for the court to grant immunity and it was justifiable for it to compel testimony.

■ The court finds that the Bankruptcy Judge properly exercised his discretion in finding John A. Settle, Jr. in contempt of court. The motion to set aside the contempt finding is denied.

It is ironical that the issue is raised by the appellant that the bankruptcy court lacked jurisdiction. This was not an involuntary petition of bankruptcy but a voluntary petition filed by the appellant.

The record shows that the Trustee was very diligent in ascertaining where assets of the bankrupt were secreted.

The appellant alleges that the Bankruptcy Court has exhibited a blatant disregard for the United States District Court for the District of New Hampshire; in paragraph 14 of its Motion for Summary Disposition of Appealed Orders, this court disagrees with this statement.

The court has examined the forty-eight page memorandum of law and exhibits A through M which have been submitted by appellant.

The court affirms the findings of the Bankruptcy Court.

### ORDER ON APPEAL

On September 11, 1980 a motion for leave to proceed on appeal in forma pauperis was

granted to John Alden Settle, Jr. One year later and as of September 9, 1981 with eighty-four docket entries, consisting of twelve orders, an interim appeal to the First Circuit Court of Appeals and another pending before the First Circuit, the following is now evident. After devoting at least three weeks of court time in the past year, this court now realizes it never has had jurisdiction because of an improper appeal from the Bankruptcy Court of the State of New Hampshire.

Accordingly, the case is dismissed.

Any order or orders made by this court is stayed or held in abeyance by this court pending a final disposition by the First Circuit Court of Appeals.

September 18, 1981