In re JOHNS–MANVILLE CORP., et al., Debtors.

The COMMITTEE OF ASBESTOS–RELATED LITIGANTS AND/OR CREDITORS, Appellant,

v.

JOHNS–MANVILLE CORP., et al., Appellees.

Nos. 83 Civ. 3808 (LBS), 83 Civ. 4382 (LBS).

United States District Court, S.D. New York.

Aug. 26, 1983.

Lowell Gordon Harriss, Dwight L. Greene, Diane Krejsa, Davis, Polk & Wardwell, Michael Crames, Levin & Weintraub & Crames, New York City, for appellees.

Robert J. Rosenberg, Shelly Rothschild, Moses & Singer, New York City, for appellant.

## OPINION

SAND, District Judge.

On August 26, 1982, the Johns-Manville Corporation and affiliated corporations ("Appellees") filed petitions for reorganization under Chapter 11 of the Bankruptcy Code. Prior to the filing, Appellees had been sued in a number of lawsuits throughout the country for injuries resulting from exposure to asbestos fibers or asbestos products that were mined, manufactured, or sold by Appellees.[1] Under Chapter 11, Appellees are supposedly attempting to deal in an orderly fashion with this potential liability.

On October 8, 1982, the Committee of Asbestos-Related Litigants and/or Creditors ("Appellant") was formed pursuant to 11 U.S.C. § 1102 as an official committee to represent the interests of asbestos claimants in the reorganization proceedings.

Appellant appeals two orders of Bankruptcy Judge Lifland, entered under Section 327 of the Bankruptcy Code, 11 U.S.C. § 327, authorizing the retention of attorneys to represent Appellees. The first order, of March 28, 1983, authorized the retention of the law firm of Baker and Hostetler of Washington, D.C. to, *inter alia,* lobby before Congress with respect to legislation proposed for resolving the claims of asbestos litigants for damages arising from exposure to asbestos. The second order, entered May 26, 1983, permitted Appellees to retain four other law firms,[2] also to engage in lobbying activities. The two orders complained of were the subjects of separate appeals which have now been consolidated before this Court. Appellant objects to both orders on the grounds that the Bankruptcy Court should have conducted evidentiary hearings and allowed discovery prior to signing the orders and that the

---

1. Johns-Manville represents that it has been named defendant or co-defendant in approximately 11,000 asbestos health lawsuits, and that these lawsuits and anticipated new asbestos-related litigation have been estimated to impose a financial burden on the corporation of over $2 billion dollars over the next 20 years. Brief of Appellees at 3–4.

2. Kirkland & Ellis; Wellford, Wegman, Krulwich, Gold & Hoff; Tucker & Brown; and Wilkinson, Barker, Knauer & Quinn.

services rendered by the law firms would be duplicative, non-legal, and inconsistent with the aims of Chapter 11. Appellant further objects to the May 26th order because it authorizes retention of the four law firms on a *nunc pro tunc* basis. Appellees argue that these orders are interlocutory in nature and not currently appealable.

## DISCUSSION

### I. Appealability

■ This Court has appellate jurisdiction over "all final judgments, orders, and decrees of bankruptcy courts." 28 U.S.C. 1334(a); Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, Title IV, § 405(c)(2), 92 Stat. 2549, 2685 (1978) (jurisdiction during transition). It is well established that a final order is an order which ends the litigation on the merits and leaves nothing for the court to do except execute the judgment. *See Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945); *In re Tidewater Group,* 22 B.R. 500, 504 (D.C.N.D.Ga.1982).

■ The Section 327 orders in issue here are patently interlocutory in nature, and not final judgments. Bankruptcy Judge Lifland explicitly reserved decision on a number of issues pressed by appellant. He correctly noted that the appropriate time for a review of the propriety of charges for the services in question here would be at the Section 330 fee application hearing. *See* Brief of Appellee, p. 18 (citing hearing transcript). On that occasion, the Bankruptcy Court would be in a better position to determine what legal services were rendered by the five law firms and whether these services were within the range of those permitted by the Bankruptcy Code. Indeed it is difficult to see how the Bankruptcy Court at this juncture could determine that the lobbying services, involving numerous and complex proposed bills, in both the asbestos health and bankruptcy areas, would be duplicative. Whether the law firms should be compensated at "legal rates" for the allegedly non-legal work to be undertaken should similarly await later determination.

■ Appellant maintains that even if these orders are not final orders with the terms of 28 U.S.C. 1334(a) they come within the collateral order exception to the final judgment rule. To come under this exception, "the order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978) (footnote omitted). The challenged orders clearly do not fit within this "small class." *See id.* The fact that the Bankruptcy Court, in the later Section 330 proceeding, may choose to award no fees to the five law firms for the services rendered means that the Section 327 approvals are merely preliminary "go aheads" rather than conclusive determinations. In addition, because the Section 330 awards, if any, may be reviewed by this Court on appropriate application, the Section 327 retention orders are effectively reviewable on appeal.

■ Section 1334(b) of 28 U.S.C. offers yet a third possible basis for the appellate jurisdiction of this Court. Under this statute, the District Court may grant leave to appeal certain interlocutory orders and decrees of the Bankruptcy Court. This Court may treat the notice of appeal, filed with the Bankruptcy Court, as an application for leave to appeal. Interim Bankruptcy Rule 8004(d); *see also In re Den-Col Cartage & Distribution, Inc.,* 20 B.R. 645, 646 (D.C.D. Col.1982); *In re Hadar Leasing International Co., Inc.,* 14 B.R. 819 (D.C.S.D.N.Y.1981). Applications for leave to appeal in bankruptcy are addressed to the discretion of the court, and, as Judge Leval recently ruled, in a proceeding arising from the same bankruptcy petition, "should be liberally granted where it can help the expeditious resolution of the case." *In re Manville Forest Products Corp.,* 31 B.R. 991, at 995 n. 5 (D.C.S.D. N.Y.1983) (citing cases); *see also Bank of Marin v. England,* 385 U.S. 99, 103, 87 S.Ct. 274, 277, 17 L.Ed.2d 197 (1966) ("equitable principles govern the exercise of bankruptcy jurisdiction"); *cf.* 28 U.S.C. 1292(b).

■ This Court denies leave to appeal the issues relating to fees for allegedly duplicative services, non-legal services, and *nunc pro tunc* services.[3] Until the Section 330 hearing, and an award or denial of fees thereunder, these claims are not ripe.[4] But cognizant of the desirability of an expeditious resolution of the Chapter 11 proceedings and recognizing that several issues presented here are of first impression under the new Bankruptcy Code,[5] *see Wilson Freight Co. v. Citibank, N.A.,* 21 B.R. 398, 401 (D.C.S.D.N.Y.1982), this Court grants leave to appeal and decides the issues discussed below.

## II. Discovery and Evidentiary Hearings

■ Appellant claims the Bankruptcy Judge erred in not permitting it to take discovery on the issue of law firm retention and in not holding evidentiary hearings on the retention orders.

Appellant cites to no authority for its position on the discovery request. In the absence of controlling authority, this Court holds that it was within the Bankruptcy Judge's authority to deny the discovery request. *Cf. In re Kelly,* 70 F.2d 730 (5th Cir.1934) (former bankruptcy act; court has discretion to refuse to permit creditor to examine debtor); *United States v. Seiffert,* 357 F.Supp. 801, 807 (S.D.Tex.1973), *aff'd,* 501 F.2d 974 (1974). Because most of services at issue under Section 327 were yet to be provided, discovery would add little to appellant's and the court's knowledge of the relevant facts.

■ The same must be said about evidentiary hearings. The Bankruptcy Court, on three separate occasions, did hold hearings on the two proposed retention orders. At these hearings, appellant availed itself of the opportunity to submit affidavits and other supporting documents and to participate in oral argument. It is an open question whether Section 327 ever requires notice and an opportunity to be heard, but assuming that it does under these circumstances, these requirements have been met. Even Section 330, which by its terms calls for notice and a hearing, requires only that the hearing be "appropriate in the circumstances." 11 U.S.C. § 102. *See also* Rule of Bankruptcy Procedure 914. The right to examine and cross-examine witnesses, desired by appellant, is more process than is due at this stage in the proceedings.

## III. Consistency with the Aims of Chapter 11.

■ Appellant maintains that "by electing the remedy of a Chapter 11 proceeding,

---

**3.** As conceded by Appellant, *nunc pro tunc* retention is not *per se* inappropriate. Reply Brief of Appellant at 4. Assuming that the criteria for *nunc pro tunc* retention recently articulated in *In re Twinton Properties Partnership,* 27 B.R. 817, 819–20 (Bkrtcy.M.D.Tenn. 1983), apply, Appellees have met these standards to this Court's satisfaction. Specifically, the reasonableness of Appellant's objections to the orders and of Appellees' failure to seek preemployment approval are questions to be determined in the first instance by the factfinder, Bankruptcy Judge Lifland. Appellant has offered this Court no persuasive reasons to reject Judge Lifland's determination that the relevant standards have been met. It of course remains open to Appellant to argue that, under Section 330, no fee for *nunc pro tunc* services should be allowed. Indeed, we note that under the old Bankruptcy Act this Circuit has taken a rigid stance against such fee awards. *See In re Triangle Chemicals, Inc.,* 697 F.2d 1280, 1285 (5th Cir.1983) (discussing Second Circuit's "per se" rule against *nunc pro tunc* attorney fee awards).

**4.** We reject Appellant's contention that this Court should now undertake a more comprehensive review of the Bankruptcy Court's orders because of the psychological pressure which would be present at the time of the fee application not to deny compensation with respect to services actually rendered, especially with respect to services rendered pursuant to court orders. By explicitly conditioning his orders and deferring until the fee application issues which Appellant now seeks to raise, Judge Lifland effectively eliminated any valid contention that these issues would be precluded at the time of the fee application.

**5.** In arguing that several of the issues which we have determined not to be ripe for decision are matters of first impression, Appellant either ignores the facts or begs the question. For example, Appellant maintains that this Court must decide "whether a Chapter 11 debtor can retain five law firms to render duplicative services." Reply Brief of Appellant at 19.

Manville became committed to utilizing the procedures mandated by Chapter 11 and surrendered its right to [lobby for proposed legislation], which is manifestly inconsistent therewith." Brief of Appellant at 29. Thus, appellant continues, retention of law firms for the purpose of lobbying is improper.[6]

This Court finds no such election of remedies under Chapter 11. Appellant's contention about the likely effect of the lobbying efforts is mere speculation. As to legislation now pending, Appellant urges that "this legislation, if passed, *might* conflict with a plan of reorganization which *may* be formulated by the parties ...." *Id.* at 30 (emphasis added). Then again, there may be no conflict—indeed, Appellant is the only Manville creditor to object to the retention orders. It is far from clear at this stage whether the lobbying in question conflicts with either Chapter 11 or the best interests of the asbestos claimants.[7] This Court merely rules at the present time that resort to Chapter 11 does not impose a *per se* rule against lobbying activity. We thus uphold the Bankruptcy Judge's exercise of discretion.

For the foregoing reasons, we grant leave to appeal the retention orders, solely with respect to issues discussed in II and III, and affirm the rulings of the Bankruptcy Court.

So Ordered.

6. There is another prong to Appellant's objection to the proposed lobbying. Appellant maintains "lobbying consists of non-legal services" and that "a debtor may not retain a law firm to perform non-legal work at legal rates of compensation." Brief of Appellant at 27–28. To the extent that this argument has not been dismissed above as unripe for decision, we reject it as being without merit. Lawyers are particularly appropriate persons to evaluate and recommend proposed legislation. Some aspects of lobbying may clearly encompass rendition of a legal service.

7. Assuming *arguendo* that there are such conflicts, a difficult First Amendment issue may arise. Lobbying for proposed legislation is quintessential First Amendment-protected activity, and this protection extends to corporations. *See, e.g., First National Bank v. Bellotti,* 435 U.S. 765, 776–86, 98 S.Ct. 1407, 1415–21, 55 L.Ed.2d 707 (1978). Resolution of the First Amendment issue, however, is unnecessary at the present time.