**In the Matter of Solomon Block and Rosalind Block, Bankrupts.**

**Solomon BLOCK, Bankrupt-Appellant,**

**v.**

**Sylvia CONSINO et al., Creditors-Appellees.**

**No. 74–2634.**

United States Court of Appeals, Ninth Circuit.

May 3, 1976.

Judith A. Gilbert, Los Angeles, Cal. (argued), for bankrupt-appellant.

James J. Wilson, Los Angeles, Cal. (argued), for creditors-appellees.

## OPINION

Before ELY, CHOY and SNEED, Circuit Judges.

SNEED, Circuit Judge:

Block appeals from a contempt citation due to his failure to answer certain questions propounded by creditors during a creditors' meeting incident to his bankruptcy. Block argues that the contempt procedures used by the referee were not in accordance with Bankruptcy Rule 920, and that the immunity provided by section 7(a)(10) of the Bankruptcy Act, 11 U.S.C. § 25(a)(10), was insufficient to protect Fifth Amendment rights against self-incrimination. Neither argument has merit, and we therefore affirm.

1. Rule 920. Contempt Proceedings.

 (a) Contempt Committed in Proceedings Before Referee.

 (1) *Summary Disposition by Referee.* Misbehavior prohibited by § 41a(2) of the Act may be punished summarily by the referee as contempt if he saw or heard the conduct constituting the contempt and it was committed in his actual presence. The order of contempt shall recite the facts and shall be signed by the referee and entered of record.

## I. *Statement of Facts.*

Appellant Block is a certified public accountant, and was employed by Seidman & Seidman, former auditors for Equity Funding Corporation of America. As one integrally involved in the audit of Equity Funding, Block finds himself at the center of the litigation emanating from this massive scandal. Block is a defendant in several civil and criminal lawsuits arising therefrom.

Block filed for personal bankruptcy, and at the first meeting of creditors refused on Fifth Amendment grounds to answer certain questions, generally relating to his duties at Equity Funding, propounded by counsel for certain creditors. These creditors were plaintiffs in civil lawsuits filed against Block, *inter alios,* arising out of the purported fraud at Equity Funding. The referee referred the matter to the district judge, who found Block in contempt for his refusal to answer.

## II. *Bankruptcy Rule 920.*

Block contends that the procedures of rule 920(a)(2) were not followed in that there was no contempt hearing, upon notice, before the referee. The referee held no hearing, but certified the facts to the district judge for a determination. Block does not contend that there was no hearing or no notice at the district court, but argues that he was denied the "preliminary" hearing at the Bankruptcy court level, as mandated, he claims, by Bankruptcy Rule 920(a)(2). That argument must fail.

The text of rule 920(a) is set forth in the margin.[1] Block relies heavily upon the first

 (2) *Disposition by Referee upon Notice and Hearing.* Any other conduct prohibited by § 41a of the Act may be punished by the referee only after hearing on notice. The notice shall be in writing and shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the contempt charged and whether the contempt is criminal or civil or both. The notice may be given on the referee's own initiative or on motion by a party, by the United States attorney, or by an

sentence of rule 920(a)(2), which provides: "[a]ny other conduct prohibited by § 41a of the Act may be punished by the referee only after hearing on notice." However, this language merely means that the referee, *if* he does not refer the case under rule 920(a)(4), must hold a hearing for conduct other than that described in rule 920(a)(1), but does not preclude him from referring the case to the district judge without a hearing. Indeed, the referee may not order imprisonment or a fine of more than $250, and should forward the case to the district judge if more severe punishment is warranted.[2] In such a case, neither the logic nor the language of rule 920 requires a duplicative hearing before the referee.

### III. *Immunity Provided by Section 7(a)(10) of the Bankruptcy Act.*

Block makes a frontal assault upon the immunity provided by section 7(a)(10) of the Bankruptcy Act, 11 U.S.C. § 25(a)(10), and argues that the scope of that statute is too narrow to be coextensive with the privilege against self-incrimination afforded by the Fifth Amendment, and hence that the statute is void on its face. Alternatively, he argues that given the unusual circumstances of this case only transactional immunity is sufficient to protect him.

### A. *Section 7(a)(10) is Constitutional On Its Face*

In *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), the Supreme Court rejected the notion that the Fifth Amendment requires full transactional immunity, and sanctioned a statute providing use and derivative use immunity.[3] The statute at issue in *Kastigar* was 18 U.S.C. § 6002, a part of the Organized Crime Control Act of 1970.[4]

Section 7(a)(10), also a use and derivative use statute, was enacted along with section 6002, and was designed in conformity with section 6002:

> "Section 206—This section makes a conforming amendment to [Section 7(a)(10) of] the Bankruptcy Act of July 1, 1898." H.R.Rep. 91–1118, 91st Cong., 2d Sess. 14 (1970).

attorney appointed by the referee for that purpose. If the contempt charged involves disrespect to or criticism of the referee, he is disqualified from presiding at the hearing except with the consent of the person charged.

(3) *Limits on Punishment by Referee.* A referee shall not order imprisonment nor impose a fine of more than $250 as punishment for any contempt, civil or criminal.

(4) *Certification to District Judge.* If it appears to a referee that conduct prohibited by § 41a of the Act may warrant punishment by imprisonment or by a fine of more than $250, he may certify the facts to the district judge. On such certification the judge shall proceed as for a contempt not committed in his presence.

2. As the Advisory Committee's Notes point out:

> *Referee's authority respecting minor contempts.*
> Paragraph (4) of subdivision (a) of this rule retains for all but minor contempts the certification procedure of § 41b of the Act. If it appears to a referee that conduct in proceedings before him may warrant imprisonment or a fine of more than $250, the referee *should* proceed under this paragraph. (Emphasis added).

3. Transactional immunity grants immunity from prosecution to which the compelled testi-

mony relates. Use and derivative use immunity grants immunity from the use of the compelled testimony and evidence derived therefrom. 406 U.S. at 443, 92 S.Ct. at 1655, 32 L.Ed.2d at 215.

4. 18 U.S.C. § 6002 provides:

Whenever a witness refuses, on the basis of his privilege against self-incrimination, to testify or provide other information in a proceeding before or ancillary to—

(1) a court or grand jury of the United States,

(2) an agency of the United States, or

(3) either House of Congress, a joint committee of the two Houses, or a committee or a subcommittee of either House,

and the person presiding over the proceeding communicates to the witness an order issued under this part, the witness may not refuse to comply with the order on the basis of his privilege against self-incrimination; but no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order.

*See Goldberg v. Weiner,* 480 F.2d 1067, 1070 (9th Cir. 1973) (per curiam). In pertinent part, section 7(a)(10) provides that the bankrupt may be examined at the first meeting of creditors, but that

" . . . no testimony, or any evidence which is directly or indirectly derived from such testimony, given by him shall be offered in evidence against him in any criminal proceeding . . . ."

■ Block attempts to distinguish section 7(a)(10) from section 6002. We first note that the overriding concern of the Court in *Kastigar* focused upon the conflict between transactional immunity and use and derivative use immunity, and not upon the particular linguistic formulation of use and derivative use immunity found in section 6002:

"This Court granted certiorari to resolve the important question whether testimony may be compelled by granting immunity from the use of compelled testimony and evidence derived therefrom ('use and derivative use' immunity), or whether it is necessary to grant immunity from prosecution for offenses to which compelled testimony relates ('transactional' immunity)." 406 U.S. at 443, 92 S.Ct. at 1655, 32 L.Ed.2d at 215.

The language used in section 6002 is not sacrosanct; any statute which fairly provides use and derivative use immunity is sufficient under the Fifth Amendment.

We have previously held that section 7(a)(10) is coextensive with the Fifth Amendment, and with section 6002, and reaffirm that holding herein. *Goldberg v. Weiner, supra.* In *Goldberg,* we rejected distinctions based upon variations in language of the two sections, and herein we reject the distinctions suggested by Block.

Block points to the fact that section 7(a)(10) prevents use of testimony or *evidence* derived therefrom, whereas section 6002 prevents use of testimony or other *information* derived therefrom. Block argues that "information" is broader than "evidence," and that the defendant's theories, understandings, and interpretations could be used against him under section 7(a)(10) immunity, but not under section 6002 immunity since, according to Block, such testimony would be "information," but not "evidence." Thus Block concludes that section 7(a)(10) protection is narrower than the section 6002 protection.

Congress did not intend, nor will we imply, any difference in scope of the two statutes based upon this language. Section 6001 defines "other information" as "any book, paper, document, record recording, or other material." The legislative history makes it clear that "other information" merely refers to non-oral testimony, and is not used, as Block would suggest, to distinguish "theories" from "evidence":

"Subsection (2) defines 'other information' to include books, papers, and other materials. The phrase is used in *contradistinction to oral testimony.* It would include, for example, electronically stored information on computer tapes. Its scope is intended to be comprehensive including all information given as testimony, but not orally." H.R.Rep. No. 91–1188, 12 (1970). (Emphasis added).

Furthermore, the language in section 7(a)(10) ("testimony, or any evidence which is directly or indirectly derived from such testimony") is very similar to the Supreme Court's definition of use and derivative use immunity in *Kastigar* ("testimony and evidence derived therefrom"). 406 U.S. at 443, 92 S.Ct. at 1655, 32 L.Ed.2d at 215. Use and derivative use immunity, thus defined, was held constitutional in *Kastigar,* and we see no basis to depart from that holding with respect to section 7(a)(10). Thus, we hold that a fair reading of the statute demonstrates that section 7(a)(10) does provide use and derivative use immunity coextensive with the Fifth Amendment privilege against self-incrimination. *See United States v. Seiffert,* 463 F.2d 1089 (5th Cir. 1972).

B. *Section 7(a)(10) As Applied to Block.*

Block argues that the immense publicity surrounding the Equity Funding scandal, coupled with the great amount of litigation involved therein (including a 105-count federal indictment against him and others), is

such that the use and derivative use immunity of section 7(a)(10) is insufficient to protect his privilege against self-incrimination. Quoting extensively from Justice Marshall's dissent in *Kastigar,* Block essentially asks this Court to rewrite *Kastigar* and hold that use and derivative use immunity is not sufficient for Block, and that full transactional immunity is required herein.

This argument misses the mark. It confuses the issue of whether use and derivative use immunity is sufficient with the issue of whether, in fact, a defendant will be immunized from the use or derivative use of his statements. The statute, section 7(a)(10), provides sufficient protection; at the proper time, Block may seek to ensure that its mandate is followed by attempting to suppress any evidence that he claims is the fruit of his testimony.

 At this point, Block will be protected by the heavy burden placed upon the Government to demonstrate that the evidence was derived from a legitimate source independent of the compelled testimony. *Kastigar,* 406 U.S. at 460, 92 S.Ct. at 1664, 32 L.Ed.2d at 226. Block argues that the testimony will spread in such diverse manners that the prosecutor may not know that the source of evidence he might use actually flowed from the hearing and that he might be able to allege in good faith that his evidence did not flow from the hearing. However, a good faith allegation that the evidence is not the fruit of the immunized testimony is not sufficient; the Government must show how it acquired all of the evidence. *United States v. Seiffert, supra,* 463 F.2d at 1092. As the Court stated in *Kastigar:*

"This burden of proof, which we reaffirm as appropriate, is not limited to a negation of taint; rather, it imposes on the

prosecution the affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony." 406 U.S. at 460, 92 S.Ct. at 1665, 32 L.Ed.2d at 226.

Thus, it may be, as Block points out, that information from the bankruptcy testimony will leak to the prosecution. However, Block is still protected since the Government may not use this evidence unless it can prove an independent, collateral source. *See United States v. Catalano,* 491 F.2d 268, 272 (2d Cir.), *cert. denied,* 419 U.S. 825, 95 S.Ct. 42, 42 L.Ed.2d 48 (1974).[5] In addition, nothing said herein is designed to preclude the district judge from resorting to expedients, such as requiring the presence of prosecutors at the time of Block's testimony or immediately bringing such testimony to the attention of such prosecutors, as he may determine proper to protect Block from use of his testimony.

Block also complains that he is not afforded the secrecy of a grand jury proceeding, as was the case in *Kastigar.* The Court in *Kastigar* in no way limited the scope of use and derivative use immunity to a grand jury proceeding. Indeed, it strikes us that whereas a witness may be compelled to appear and testify before a grand jury, Block, on the other hand, has voluntarily placed himself before the bankruptcy court. Block cannot be heard to complain, protected as he is by use and derivative use immunity, about the open forum of the creditors' meeting.

In short, Block argues that the statute will not work. The court in *Kastigar* clearly rejected any contention that the protection afforded by use and derivative use immunity will be impossible to enforce.

---

**5.** Although it is true that the creditors did not complete their questioning of Block, our review of the questions propounded to Block leads us to conclude that the issue of an independent, collateral source will be a relatively simple one. The testimony well relate to Block's job function at Equity Funding and will, in general, consist of: (a) semi-public, easily accessible information that the Government can demonstrate was obtained from an independent source (i. e., what Block's duties were, which audits he worked on, who worked for him, and so forth), or (b) extremely personal information that the Government will have great difficulty in adducing a collateral source, and that the district court will be highly skeptical about admitting (i. e., whether or when Block actually knew of certain fraudulent acts, his conversations and transactions with other defendants, and so forth).

406 U.S. at 459–60, 92 S.Ct. at 1664, 32 L.Ed.2d at 225–26.

AFFIRMED.