MESKILL, Circuit Judge:
 

 This is an appeal from an order of the United States District Court for the District of Connecticut, Cabranes, J., holding appellant Anthony R. Martin-Trigona in civil contempt for his refusal to comply with a court order requiring him to answer ques
 
 *171
 
 tions put to him by counsel for the trustee of his estate in bankruptcy during an examination pursuant to Bkrtcy.R. 2004 after a grant of immunity under 18 U.S.C. § 6003 (1982). Judge Cabranes ordered appellant incarcerated until he is ready and willing to testify in full. We stayed the order of incarceration pending the outcome of this appeal. We now vacate the stay and affirm the order below.
 

 BACKGROUND
 

 Appellant is a debtor whose personal bankrupt estate presently is before Judge Cabranes. He is no stranger to the federal courts,
 
 Martin-Trigona v. Smith,
 
 712 F.2d 1421, 1423 & n. 1 (D.C.Cir.1983) (per curiam);
 
 Martin-Trigona v. Shiff,
 
 702 F.2d 380, 382 & n. 1 (2d Cir.1983), having demonstrated throughout his various proceedings a penchant for obfuscation and delay. In particular, he has gone to great lengths in his bankruptcy matters to avoid testifying about his assets.
 
 See, e.g., Martin-Trigona v. Gouletas,
 
 634 F.2d 354 (7th Cir.) (per curiam),
 
 cert. denied,
 
 449 U.S. 1025, 101 S.Ct. 593, 66 L.Ed.2d 486 (1980).
 

 On June 23, 1983, shortly after Judge Cabranes transferred to the district court all matters concerning appellant’s estate in bankruptcy pending in the United States Bankruptcy Court for the District of Connecticut, counsel for the trustee sought to question appellant pursuant to Bkrtcy.R. 205.
 
 [1]
 
 Appellant refused to answer several questions, claiming his Fifth Amendment privilege against self-incrimination. The examination was continued until July 1, 1983. On that date, appellant’s prior counsel, M. Hatcher Norris, invited opposing counsel to apply for a grant of immunity and strongly implied that appellant would testify if immunity were forthcoming.
 

 The United States Attorney subsequently applied for immunity under 18 U.S.C. § 6003, stating that appellant’s testimony was “necessary to the public interest.” On November 3, 1983 Judge Cabranes granted the application for immunity. Examination of appellant was continued until January 3, 1984.
 
 [2]
 

 Appellant again refused to testify at the hearing held on January 3 on the basis of the privilege against self-incrimination. Judge Cabranes ordered appellant to answer the questions put to him by trustee Belford’s counsel. Appellant refused. As a result, Judge Cabranes held appellant in civil contempt and ordered him incarcerated until he was prepared to testify in full. Martin-Trigona appealed and on January 4 we granted his motion for a stay of incarceration pending the disposition of this expedited appeal.
 

 DISCUSSION
 

 Appellant’s initial argument is that the immunity statutes, 11 U.S.C. § 344 (1982);
 
 [3]
 
 18 U.S.C. §§ 6001-6005 (1982),
 
 [4]
 
 
 *172
 
 are inapplicable to civil proceedings. In support of his position he cites two footnotes appearing in
 
 Pillsbury Co. v. Conboy,
 
 459 U.S. 248, 103 S.Ct. 608, 74 L.Ed.2d 430 (1983), one in the majority opinion and one in the concurring opinion. The majority opinion footnoted “[w]e need not decide whether United States Attorneys, when designated by the Attorney General, presently have authority to immunize the testimony of a witness in a civil proceeding when the Government determines that the public interest would be served.”
 
 Id.
 
 at 261 n. 20, 103 S.Ct. at 616 n. 20. Justice Marshall, in his concurrence, cited the footnote and stated that the issue was an “open question.”
 
 Id.
 
 at 270 n. 4, 103 S.Ct. at 621 n. 4 (Marshall, J., concurring). Appellant argues that these statements somehow indicate that the Supreme Court doubts that the appropriate statutes permit the granting of immunity in order to compel testimony in non-criminal proceedings.
 

 A close look at the statutes in question leaves no doubt as to their applicability to civil proceedings in general and bankruptcy matters in particular. 11 U.S.C. § 344 explicitly incorporates the provisions of 18 U.S.C. §§ 6001-6005 where immunity is sought “for persons required to submit to examination, to testify, or to provide information in a case under this title.... ”
 

 The language of 18 U.S.C. §§ 6001-6003 explicitly applies to all civil proceedings, including bankruptcy proceedings. Section 6003(a) states that the appropriate district court shall issue an order compelling testimony upon request of a duly authorized United States attorney in accordance with the provisions of section 6003(b) “[i]n the case of
 
 any
 
 individual who has been or may be called to testify or provide other information at
 
 any
 
 proceeding before or ancillary to a court of the United States_” (emphasis added). Presumably Congress understood the implications of the phrase “any proceeding before a court of the United States.” Section 6001 defines “court of the United States” to include bankruptcy courts. This is further evidence of Congress’ intent to apply these provisions to bankruptcy proceedings. Section 6002, which provides for use and derivative use immunity for witnesses compelled to testify, states that the section is applicable “[wjhenever a witness refuses, on the basis of his privilege against self-incrimination, to testify or provide other information in a proceeding before or ancillary to — (1) a court ... of the United States_” Other courts have applied the immunity statutes in civil proceedings.
 
 See In re Ryan,
 
 538 F.2d 435, 437 n. 2 (D.C.Cir.1976) (“A proceeding in the Tax Court is a proceeding before a ‘court of the United States’ in which the immunity statute may be invoked.”);
 
 United States v. Cappetto,
 
 502 F.2d 1351, 1359 (7th Cir.1974),
 
 cert. denied,
 
 420 U.S. 925, 95 S.Ct. 1121, 43 L.Ed.2d 395 (1975) (civil RICO);
 
 In re Channel,
 
 29 B.R. 316, 318 (Bkrtcy.W.D.Ky.1983) (proper method to obtain testimony from a debtor claiming the privilege against self-incrimi
 
 *173
 
 nation is to request the United States attorney to apply for a grant of immunity).
 

 Appellant’s second claim is that even if he can be compelled to testify according to 11 U.S.C. § 344, the consequence of his refusing to do so should only be a denial of his discharge, not contempt. This point is meritless.
 

 “[C]ourts have inherent power to enforce compliance with their lawful orders through civil contempt.”
 
 Shillitani v: United States,
 
 384 U.S. 364, 370, 86 S.Ct. 1531, 1535, 16 L.Ed.2d 622 (1966) (citations omitted). District courts acting as courts of bankruptcy have a long history of issuing contempt citations for failure to obey their lawful orders.
 
 See, e.g., Block v. Consino,
 
 535 F.2d 1165 (9th Cir.),
 
 cert. denied,
 
 429 U.S. 861, 97 S.Ct. 165, 50 L.Ed.2d 140 (1976) (affirming contempt citation for failure to answer questions despite a grant of immunity);
 
 O’Hagan v. Blythe,
 
 354 F.2d 83, 84 (2d Cir.1965);
 
 In re Manufacturers Trading Corp.,
 
 194 F.2d 948, 956 (6th Cir.1952);
 
 Espiefs v. Settle,
 
 14 B.R. 280, 286 (D.C.N.H.1981) (debtor may be held in contempt for failing to testify despite a grant of immunity);
 
 In re Parr,
 
 13 B.R. 1010, 1015 (D.C.E.D.N.Y.1981); 1 Collier on Bankruptcy 112.58[2] (14th ed. 1974).
 

 Appellant argues that 11 U.S.C. § 727(a)(6)(B) (1982)
 
 [5]
 
 and the relevant legislative history, S.Rep. No. 989, 95th Cong., 2d Sess. 44 (1978),
 
 reprinted in
 
 1978 U.S. Code Cong. & Ad.News 5787, 5830 and H.Rep. No. 595, 95th Cong., 1st Sess. 333 (1977),
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad.News 5963, 6289, indicate that the only sanction which may be imposed on a debtor who refuses to testify despite a grant of immunity is a denial of discharge. We disagree. The statute and the legislative history indicate that a debtor may be denied a discharge as a result of his failure to testify only when he continues to refuse to testify after a grant of immunity.
 
 [6]
 
 It does not indicate that denial of the debtor’s discharge is the exclusive penalty for failing to testify despite immunity.
 
 [7]
 
 Furthermore, if the denial of discharge were the only penalty for refusing to testify, then a witness other than the debtor granted im
 
 *174
 
 munity under section 344 would have no incentive to testify. Obviously, this is not what Congress intended by section 727(a)(6)(B).
 

 Since the civil contempt order was proper, incarceration was an appropriate remedy. 28 U.S.C. § 1826(a) (1976) provides in pertinent part that:
 

 Whenever a witness in
 
 any
 
 proceeding before or ancillary to
 
 any
 
 court ... of the United States refuses without just cause shown to comply with an order of the court to testify or provide other information ... the court, upon such refusal ... may summarily order his confinement at a suitable place until such time as the witness is willing to give such testimony or provide such information,
 

 (emphasis added). The use of the word “any” indicates that Congress intended this section to apply to bankruptcy proceedings. Even without the statute, a court may coerce a recalcitrant witness to testify through incarceration.
 
 Uphaus v. Wyman,
 
 360 U.S. 72, 81, 79 S.Ct. 1040, 1046, 3 L.Ed.2d 1090 (1959);
 
 In re Grand Jury Investigation (Braun),
 
 600 F.2d 420, 422 (3d Cir.1979) (“Embedded in Anglo-American law is the inherent power of the judiciary to coerce obedience to its orders by summarily holding a recalcitrant person— such as an immunized witness who refuses to testify at a grand jury proceeding or at a trial — in civil contempt, and then imprisoning him until he complies.”).
 

 Appellant concludes his appeal by claiming that 11 U.S.C. § 344 is unconstitutional when used to compel a voluntary debtor to testify against himself, upon pain of contempt and incarceration, in a bankruptcy proceeding in which the government has no stake in the outcome. He maintains that he has a right to privacy created by the First, Fourth, Fifth and Ninth Amendments which is violated by court compelled self-incrimination in such circumstances. He claims that it is unconstitutional to incarcerate him solely for the benefit of his creditors. We reject these contentions.
 

 It is fundamental that an individual may be compelled to testify about all relevant matters before a court of law.
 
 See, e.g., Kastigar v. United States,
 
 406 U.S. 441, 443-44, 92 S.Ct. 1653, 1655-56, 32 L.Ed.2d 212 (1972);
 
 Shillitani v. United States,
 
 384 U.S. at 370, 86 S.Ct. at 1535;
 
 Murphy v. Waterfront Commission,
 
 378 U.S. 52, 93-94, 84 S.Ct. 1594, 1610, 1611, 12 L.Ed.2d 678 (1964) (White, J., concurring);
 
 Ullmann v. United States,
 
 350 U.S. 422, 439 n. 15, 76 S.Ct. 497, 507 n. 15, 100 L.Ed. 511 (1956) (“it is every man’s duty to give testimony before a duly constituted tribunal unless he invokes some valid legal exemption in withholding it”). An exception to this general rule is the constitutional privilege against self-incrimination. The primary purpose of .the self-incrimination privilege is to avoid confronting the witness with the “cruel trilemma” of self-accusation, perjury or contempt.
 
 Murphy v. Waterfront Commission,
 
 378 U.S. at 55, 84 S.Ct. at 1596.
 
 See Michigan v. Tucker,
 
 417 U.S. 433, 439-41, 94 S.Ct. 2357, 2361-62, 41 L.Ed.2d 182 (1974);
 
 Quinn v. United States,
 
 349 U.S. 155, 161-62, 75 S.Ct. 668, 672-73, 99 L.Ed. 964 (1955). Once the witness receives constitutionally adequate immunity, the “cruel trilemma” is broken.
 
 See Kastigar v. United States,
 
 406 U.S. at 448, 92 S.Ct. at 1658 (citing
 
 Ullmann v. United States,
 
 350 U.S. 422, 76 S.Ct. 497, 100 L.Ed. 511 (1956), and
 
 Brown v. Walker,
 
 161 U.S. 591, 16 S.Ct. 644, 40 L.Ed. 819 (1896));
 
 Hale v. Henkel,
 
 201 U.S. 43, 67, 26 S.Ct. 370, 376, 50 L.Ed. 652 (1906) (“if the criminality has already been taken away, the Amendment ceases to apply”).
 

 In
 
 Kastigar,
 
 the Supreme Court held that use and derivative use immunity as provided by 18 U.S.C. § 6002 is coextensive with the Fifth Amendment privilege against self-incrimination and thus the statute is constitutional. 406 U.S. at 453, 92 S.Ct. at 1661. Consequently, a witness who is granted immunity under this provision can be compelled to testify.
 

 Appellant argues that
 
 Kastigar
 
 should not apply to a voluntary debtor in a bankruptcy proceeding. He claims that his privacy interests are paramount where the government does not have a direct interest
 
 *175
 
 in the outcome. He appears to maintain that, at a minimum, he should be accorded full transactional immunity as the constitutional price for his testimony. The law is to the contrary.
 
 See Kastigar,
 
 406 U.S. at 453, 92 S.Ct. at 1661 (“The privilege has
 
 never
 
 been construed to mean that one who invokes it cannot subsequently be prosecuted.”) (emphasis added);
 
 Burrell v. Montana,
 
 194 U.S. 572, 577-78, 24 S.Ct. 787, 788-89, 48 L.Ed. 1122 (1904) (rejecting the argument that the debtor was entitled to transactional immunity for his voluntary testimony).
 

 There is no doubt that the Fifth Amendment privilege extends to bankruptcy proceedings.
 
 McCarthy v. Arndstein,
 
 266 U.S. 34, 45 S.Ct. 16, 69 L.Ed. 158 (1924). However, this Court has previously determined that use and derivative use immunity are constitutionally coextensive with the privilege in a bankruptcy hearing. In
 
 United States v. Moss,
 
 562 F.2d 155, 163 (2d Cir.1977),
 
 cert. denied,
 
 435 U.S. 914, 98 S.Ct. 1467, 55 L.Ed.2d 505 (1978), we construed 11 U.S.C. § 25(a) (repealed 1979), ünder which a bankrupt could be compelled to testify against himself. The bankrupt was granted automatic use and derivative use immunity for his testimony. 1A Collier on Bankruptcy 117.21[1] (14th ed. 1978). We cited
 
 Kastigar
 
 and 18 U.S.C. § 6002 and found that use, and derivative use immunity is coextensive with the constitutional privilege against self-incrimination in the bankruptcy setting. 562 F.2d at 163. Other courts have reached the same conclusion.
 
 In re Beery,
 
 680 F.2d 705, 719-20 (10th Cir.1982),
 
 cert. denied,
 
 459 U.S. 1037, 103 S.Ct. 449, 74 L.Ed.2d 604 (1982);
 
 Unit ed States v. Weiner,
 
 578 F.2d 757, 774 n. 15 (9th Cir.),
 
 cert. denied,
 
 439 U.S. 981, 99 S.Ct. 568, 58 L.Ed.2d 651 (1978);
 
 In re North American Investment Co.,
 
 559 F.2d 464, 465-66 (7th Cir.1977) (per curiam);
 
 Block v. Consino,
 
 535 F.2d 1165, 1167-68 (9th Cir.),
 
 cert. denied,
 
 429 U.S. 861, 97 S.Ct. 165, 50 L.Ed.2d 140 (1976);
 
 Goldberg v. Weiner,
 
 480 F.2d 1067, 1070-71 (9th Cir.1973) (per curiam);
 
 United States v. Seiffert,
 
 463 F.2d 1089, 1091-92 (5th Cir. 1972);
 
 Espiefs v. Settle,
 
 14 B.R. 280, 285-86 (D.C.N.H.1981).
 

 Appellant argues that
 
 Moss
 
 is distinguishable in that under prior bankruptcy law immunity was automatically granted whereas under present law the United States attorney must request immunity. This distinction is without significance. As
 
 Kastigar
 
 indicates, the crucial inquiry is whether the protection accorded to the witness is coextensive with the Fifth Amendment’s requirements. The method of acquiring immunity is unimportant for our purposes.
 
 See Block v. Consino,
 
 535 F.2d at 1168 (“any statute which fairly provides use and derivative use immunity is sufficient under the Fifth Amendment”). Because the scope of immunity offered a debtor under the former and present bankruptcy laws has not changed and because the Supreme Court upheld the constitutionality of 18 U.S.C. § 6002 in
 
 Kastigar,
 
 there is no reason to question the continued validity of
 
 Moss.
 

 Appellant takes the position that his incarceration is unconstitutional because it is solely for the benefit of his creditors.
 
 See generally Grimes v. Miller,
 
 429 F.Supp. 1350, 1356 (M.D.N.C.) (“[TJhere can be no justification in the first place for civil commitment of a debtor to prison unless their [sic] is some reasonable apprehension and belief that failure to do so will defeat recovery of the debt.”),
 
 aff'd mem.,
 
 434 U.S. 978, 98 S.Ct. 600, 54 L.Ed.2d 473 (1977);
 
 Abbit v. Bernier,
 
 387 F.Supp. 57, 60-62 (D.Conn.1974) (declaring Connecticut statute permitting body execution of debtors to be unconstitutional). Appellant misunderstands his predicament. He is not being incarcerated for the benefit of his creditors, but rather for his contemptuous conduct in refusing to comply with a lawful court order. Thus, appellant is being incarcerated solely to protect the force of a lawful court order.
 

 Moreover, appellant’s argument that he cannot be compelled to testify since the government has no stake in his testimony ignores the court’s and society’s interest in having him testify in full about his assets.
 
 *176
 
 In settling disputes a court searches for truth. Witnesses are compelled to testify in order to satisfy this goal. Appellant maintains that he should be the final arbiter of the necessity of his testimony. He claims that his privacy interests surpass the interests of the court and the public in finding truth. His
 
 ipse dixit
 
 position mocks the court’s role as a .truthseeker.
 

 Here, the court has a significant interest in obtaining appellant’s testimony, as does trustee Belford, because he is “entitled to a full and fair examination of the [debtor] _”
 
 In re Johnson,
 
 18 F.2d 965, 965 (E.D.N.Y.1926).
 
 [8]
 
 Therefore, appellant must testify or be prepared to face the coercive methods lawfully available to the court to compel his testimony.
 

 The stay of incarceration is ordered to be vacated upon the issuance of the mandate; the order below is affirmed. The mandate shall issue five days from the date of this decision, in order to permit a brief interval for application to the Supreme Court for a further stay.
 

 [1]
 

 . This rule is presently embodied in Bkrtcy.R. 2004 (effective August 1, 1983).
 

 [2]
 

 . Examination of appellant was scheduled for December 13, 1983. Before examination began on that day, Judge Cabranes summarily held appellant in criminal contempt, which was the subject of another appeal.
 
 United States v. Martin-Trigona,
 
 No. 83-1444,
 
 motion to remand for reconsideration granted
 
 (Dec. 30, 1983).
 

 [3]
 

 . 11 U.S.C. § 344 provides that:
 

 Immunity for persons required to submit to examination, to testify, or to provide information in a case under this title may be granted under part V [sections 6001-6005] of title 18.
 

 [4]
 

 . 18 U.S.C. § 6001 states in pertinent part:
 

 As used in this part—
 

 (4) "court of the United States” means any of the following courts: ... a United States district court ... a United States bankruptcy court ....
 

 18 U.S.C. § 6002 states in pertinent part:
 

 Whenever a witness refuses, on the basis of his privilege against self-incrimination, to testify or provide other information in a proceeding before or ancillary to—
 

 (1) a court or grand jury of the United States,
 

 and the person presiding over the proceeding communicates to the witness an order issued under this part, the witness may not refuse to comply with the order on the basis of his privilege against self-incrimination; but no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or oth
 
 *172
 
 er information) may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order. 18 U.S.C. § 6003 states:
 

 (a) In the case of any individual who has been or may be called to testify or provide other information at any proceeding before or ancillary to a court of the United States or a grand jury of the United States, the United States district court for the judicial district in which the proceeding is or may be held shall issue, in accordance with subsection (b) of this section, upon the request of the United States attorney for such district, an order requiring such individual to give testimony or provide other information which he refuses to give or provide on the basis of his privilege against self-incrimination, such order to become effective as provided in section 6002 of this part.
 

 (b) A United States attorney may, with the approval of the Attorney General, the Deputy Attorney General, or any designated Assistant Attorney General, request an order under subsection (a) of this section when in his judgment — ■
 

 (1) the testimony or other information from such individual may be necessary to the public interest; and
 

 (2) such individual has refused or is likely to refuse to testify or provide other information on the basis of his privilege against self-incrimination.
 

 18 U.S.C. §§ 6004-6005 are not implicated in the instant dispute.
 

 [5]
 

 . 11 U.S.C. § 727(a)(6)(B) provides in pertinent part:
 

 (a) The court shall grant the debtor a discharge, unless—
 

 (6) the debtor has refused, in the case—
 

 (B) on the ground of privilege against self-incrimination, to respond to a material question approved by the court or to testify, after the debtor has been granted immunity with respect to the matter concerning which such privilege was invoked ....
 

 [6]
 

 . Prior to the enactment of the 1978 bankruptcy code, a debtor was granted automatic use and derivative use immunity for his testimony with one exception. 1A Collier on Bankruptcy ¶ 7.21[1] (14th ed. 1978). The sanction for refusing to testify was an automatic denial of discharge.
 
 Id.
 
 ¶ 7.21 [2]. 11 U.S.C. § 344, by incorporating 18 U.S.C. §§ 6001-6005, eliminated the provision for automatic immunity and preconditioned immunity upon a request by the United States attorney. Section 727(a)(6)(B) ensures that a debtor who refuses to testify on the basis of the privilege against self-incrimination where immunity has not been granted will not be penalized through a denial of discharge. Conversely, a debtor who has been granted immunity must testify or be denied his discharge.
 

 [7]
 

 .The only item in the legislative history that even arguably supports the claim that denial of discharge is the exclusive remedy for an immunized debtor’s failure to testify is the following sentence in the House Report: "Under section 727(a)(6) ... a debtor is only denied a discharge if he refuses to testify after having been granted immunity.” H.Rep. No. 595, 95th Cong., 1st Sess. 332-33 (1977):
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad.News 6289. We think it plain that this sentence reveals the not uncommon faulty sentence structure of failing to place the adverb "only” immediately adjacent to the words that it modifies. In contrasting the new statute with the prior practice whereby a debtor could be denied discharge for refusing to testify, even when claiming the privilege against self-incrimination, the House Report sought to make clear the modest change under the new statute that discharge could be denied to a debtor "only ... if he refuses to testify after having been granted immunity.”
 
 Id.
 
 To read "only” as modifying "denied a discharge” and thereby making non-discharge the exclusive sanction for refusing to testify would result in a drastic change from prior law that is nowhere suggested in the statute or its legislative history.
 

 [8]
 

 . Appellant's claim that he cannot be compelled to testify where his testimony will expose him to public disgrace or infamy is frivolous. That a grant of immunity may not protect a witness from personal disgrace resulting from his compelled testimony does not make the immunity constitutionally inadequate.
 
 Reina v. United States,
 
 364 U.S. 507, 513, 81 S.Ct. 260, 264, 5 L.Ed.2d 249 (1960);
 
 Smith v. United States,
 
 337 U.S. 137, 147, 69 S.Ct. 1000, 1005, 93 L.Ed. 1264 (1949);
 
 Brown v. Walker,
 
 161 U.S. at 605, 16 S.Ct. at 650.