JON 0. NEWMAN, Circuit Judge:
 

 Anthony R. Martin-Trigona appeals from a judgment of the District Court for the District of Connecticut (José A. Cabranes, Judge) convicting him of criminal contempt and sentencing him to six months’ imprisonment for willful violation of an injunction. The injunction imposes restrictions on Martin-Trigona’s right to initiate litigation in federal and state courts throughout. the United States.
 
 See In re Martin-Trigona,
 
 573 F.Supp. 1245 (D.Conn.1983). The validity of the injunction was upheld by this Court, with a modification concerning suits filed in state courts.
 
 In re Martin-Trigona,
 
 737 F.2d 1254 (2d Cir.1984).
 
 See also In re Martin-Trigona,
 
 592 F.Supp. 1566, 1569-76 (D.Conn.1984) (text of revised District Court injunction currently in effect). Without in any way questioning the validity of the injunction or the need to enforce it in all circumstances where it fairly applies, we conclude, for reasons set forth below, that the injunction may not validly be applied to punish the conduct that occurred in this case, and we therefore reverse.
 

 The history of the vexatious litigation that occasioned the injunction has been fully set forth by the able District Judge, upon whom have been thrust burdens and harassments far beyond the normal occupational hazards of a trial judge.
 
 See In re Martin-Trigona, supra,
 
 573 F.Supp. at 1261-66. Suffice it to note that Martin-Tri-gona has “filed more than 250 civil actions, appeals, and other matters in little more than a decade,”
 
 id.
 
 at 1261, and has “pursued his numerous legal actions with persistence, viciousness, and general disregard for decency and logic,”
 
 id.
 
 at 1262.
 

 Two provisions of the injunction are relevant to the conduct underlying the contempt citation. The first provision totally
 
 *261
 
 prohibits Martin-Trigona from filing in any federal court lawsuits arising out of conduct of persons involved in bankruptcy proceedings concerning Martin-Trigona or his property.
 
 Id.
 
 at 1266. The evident purpose of this provision is to channel bankruptcy disputes into the pending bankruptcy proceedings. The injunction contemplates that such disputes will be subject to review upon “a consolidated appeal from such bankruptcy proceedings,” provided the appeal is pursued with leave of the reviewing court.
 
 Id.
 
 at 1267. The second provision conditionally prohibits filing in any federal court any “new action” without first obtaining leave of the court in which the action is to be filed, and it further specifies that, in seeking the required leave of court, Martin-Trigona “must comply” with each of five requirements designed to alert the court to the history of Martin-Tri-gona’s vexatious litigation and to the existence of the injunction.
 
 Id.
 
 Specifically pertinent to this appeal is the third requirement, which calls for submission of a declaration or affidavit “certifying that the claim [Martin-Trigona] wishes to present is a new claim never before raised by him in any court.”
 
 [1]
 

 Id.
 

 The circumstances giving rise to the contempt citation are as follows. On September 3, 1982, several months prior to the date of the injunction, June 23, 1983, Martin-Trigona brought suit in the District Court for the Southern District of New York against the Washington law firm of Pierson, Ball & Dowd. No. 82 Civ. 5923 (S.D.N.Y.1982). The suit alleged wrongdoing by Pierson, Ball arising out of the law firm’s appearance before the Federal Communications Commission in an effort to secure the FCC’s approval to transfer to a trustee in bankruptcy in the District of Massachusetts Martin-Trigona’s license to operate a Boston radio station. On October 20, 1982, Judge Sand dismissed the suit for lack of proper venue and declined to transfer it under 28 U.S.C. § 1404 (1982). That dismissal was affirmed by this Court, 742 F.2d 1430 (2d Cir.1983) (summary order), and a petition for rehearing was denied on May 26, 1983.
 

 On July 14, 1983, three weeks after the District Court in Connecticut issued the injunction concerning future litigation, Martin-Trigona filed a lawsuit in the District Court for the District of Columbia against the Pierson, Ball law firm. Civ. No. 83-2007 (D.D.C.1983). The District of Columbia complaint was a “cut-and-paste” version of the complaint that had been filed in the Southern District of New York. Martin-Trigona did not seek leave of the District Court in the District of Columbia to file the suit, nor did he submit to that Court the documents required by the injunction to be presented in seeking leave to file. However, eight days after filing the suit and before the complaint was served on any defendant, Martin-Trigona sent a letter to Judge John H. Pratt, to whom the District of Columbia suit was initially assigned. In that letter Martin-Trigona stated that his complaint against the Pierson, Ball firm was a “carbon copy” of a complaint previously filed in the Southern District of New York and dismissed for improper venue, noted that litigation was pending in the Court of Appeals for the Second Circuit concerning “whether I should be required to secure leave of court to file pleadings,” expressed doubt that the District of Columbia suit “even falls within the relevant orders because it is a refiling of an existing case,” and sought leave of Judge Pratt “to proceed with service of the summons and complaint on the defendants.”
 

 The filing of the District of Columbia suit ultimately became the subject of a criminal contempt proceeding in the District of Connecticut to determine whether Martin-Trigona had willfully violated the injunction. It was undisputed that Martin-Trigona had been served with the injunc-
 
 *262
 
 “crackpot letters” he had received from the District Court in Connecticut.
 

 Judge Cabranes found Martin-Trigona in contempt for having willfully violated the injunction. The District Judge ruled that the filing of the District of Columbia lawsuit violated both the “bankruptcy proceedings” provision and the “new action” provision of the injunction. He imposed a sentence of six months. Martin-Trigona has been admitted to bail with respect to that sentence, though he is currently incarcerated for civil contempt for an unjustified refusal to testify.
 
 See In re Martin-Trigona,
 
 732 F.2d 170 (2d Cir.),
 
 cert. denied,
 
 — U.S. -, 105 S.Ct. 191, 83 L.Ed.2d 124 (1984).
 

 Discussion
 

 Both the appellant and the Government agree that the primary thrust of the contempt adjudication concerns the violation of the “new action” provision of the injunction. They vigorously dispute, however, whether the District of Columbia suit was a “new action” within the coverage of the injunction. Obviously, the suit was “new” to the District of Columbia, and, since a principal purpose of the injunction was to alert all district courts to Martin-Trigona’s history of vexatious litigation, it would certainly be reasonable to view the District of Columbia suit as one covered by the injunction so that Judge Pratt, had he been initially alerted to the injunction and its genesis, could have decided whether to permit the suit to be filed. On the other hand, there is some force to appellant’s contention that the suit is not “new” since it is only a refiled version of a suit filed and dismissed on venue grounds prior to the issuance of the injunction. That argument, however, if carried too far, would undermine the essential purpose of the injunction. Martin-Trigona must not be permitted to harass all the defendants he has previously sued without success by refiling in new jurisdictions either revised or substantially identical versions of the claims that were rejected on their merits or abandoned. The refiling of a suit with such claims would manifestly be the very sort of “new” suit the injunction was designed to cover.
 

 In our view, the critical issue on this appeal is not whether the District of Columbia suit is a “new action” within the meaning of the injunction. Even if the terms of the injunction may plausibly be read to cover it, there is a fundamental reason why the injunction may not validly be applied to punish Martin-Trigona for criminal contempt for filing that suit. As previously noted, the injunction’s “new action” provision requires Martin-Trigona to include among the documents he must submit to the court in which he wishes to file suit an affidavit certifying that the claim has “never before been raised by him in any court.” Since it is impossible truthfully to comply with this certification requirement as to claims previously filed, the effect of this requirement is not merely to impose a leave-of-court condition on the refiling of such claims, but to prohibit their refiling. That prohibition is entirely reasonable as applied to prior claims that were adjudicated on the merits or abandoned. But if the injunction may be applied to a claim filed prior to the injunction and dismissed only for improper venue, the resulting prohibition on the refiling of the claim in a proper venue would raise a substantial due process question. We need not face that question, however, because we see nothing in the proceedings that led to the injunction, in the injunction itself, or in this Court’s decision upholding the essence of the injunction that would support its application in a manner that would prohibit the refiling of a suit dismissed on venue grounds before the injunction issued.
 

 Perhaps the injunction might be construed to mean that, as to a suit dismissed on venue grounds, the injunction should apply in a slightly amended form that would require Martin-Trigona to comply with the requirements of the “new action” provision to the extent feasible, omitting compliance with the requirement of certification as to no prior filing and substituting an explanation to the court where leave is sought of the circumstances that occa
 
 *263
 
 tion, knew that it was in effect, and knew that the prior appeal of the injunction to this Court did not affect its validity. The evidence also disclosed that at an August 11,1983, hearing in the New York office of the United States Trustee Martin-Trigona in sworn testimony referred to the injunction as “crank mail” and one in a series of sioned lack of strict compliance. Applying the injunction with such a construction, however, would raise a serious issue as to whether Martin-Trigona was being “punished for the disobedience of an order which does not definitely prescribe what he is to do,”
 
 NLRB v. New York Merchandise Co.,
 
 134 F.2d 949, 952 (2d Cir.1943), and would raise a further issue as to whether Martin-Trigona’s letter to Judge Pratt in the District of Columbia adequately served to comply with the suggested construction of the injunction.
 

 Under all the circumstances, we conclude that the “new action” provision of the injunction may not validly be applied to support a criminal contempt adjudication for the conduct that occurred in this instance.
 

 Turning to the “bankruptcy proceedings” provision of the injunction, we agree with appellant that the Pierson, Ball suit is not covered by this provision. The provision prohibits the filing of any action
 

 arising out of (1) the acts of any person or entity involved in any capacity with either the litigation of any bankruptcy proceeding involving Anthony R. Martin-Trigona or any of the properties in which he claims or seeks to assert an interest filed on or before the date of this order or (2) the litigation of any civil action relating to such bankruptcy proceedings and filed by him.
 

 573 F.Supp. at 1265.
 
 [2]
 
 The District Court concluded that the Pierson, Ball suit was an action arising out of the acts of a person or entity involved with the “litigation of a bankruptcy proceeding” involving Martin-Trigona or property in which he claims an interest. However, the conduct for which Pierson, Ball was sued, though relating to a bankruptcy proceeding involving property in which Martin-Trigona claims an interest, does not fall within clause (1) of this provision because the law firm was not involved with the litigation “of” that bankruptcy proceeding; rather, the firm was involved with proceedings before the Federal Communications Commission. Though the law firm was retained by the trustee in the Massachusetts bankruptcy proceeding to appear in the FCC proceeding and the firm’s activity therefore related to a bankruptcy proceeding, it is clause (2) of the “bankruptcy proceedings” provision, not clause (1), that covers litigation “relating to” bankruptcy proceedings. Clause (2) does not apply to the Pierson, Ball suit because the FCC proceeding, though “relating to” a pertinent bankruptcy proceeding, was not filed by Martin-Trigona.
 

 Accordingly, the adjudication of criminal contempt is reversed.
 

 [1]
 

 - This provision was subsequently replaced by the District Court with a requirement that Martin-Trigona certify "whether or not the claim he wishes to present is a claim ever raised by him in any court, agency, tribunal, committee, or other forum.
 
 See In re Martin-Trigona, supra,
 
 592 F.Supp. at 1572.
 

 [2]
 

 . The provision contains a slight ambiguity as to whether the designation "(1)" is properly placed, contrasting "the acts of any person ...” with "the litigation of any civil action ...,” or should have been placed after "either,” so that the contrast would be between "the litigation of any bankruptcy proceeding involving ...” and “the litigation of any civil action relating....” For purposes of this appeal, the distinction is of no consequence. This provision was subsequently revised by the District Court.
 
 See In re Martin-Trigona, supra,
 
 592 F.Supp. at 1571.